J-S68026-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RANDOLPH SIMPSON, | : | |
| | : | |
| Appellant | : | No. 2164 EDA 2014 |

Appeal from the Judgment of Sentence May 23, 2014,
Court of Common Pleas, Lehigh County,
Criminal Division at No. CP-39-CR-0000648-2012

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED NOVEMBER 24, 2015**

Appellant, Randolph Simpson ("Simpson") appeals nunc pro tunc from the judgment of sentence entered on May 23, 2014 by the Court of Common Pleas, Lehigh County, following a conviction of persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a)(1).  For the reasons set forth herein, we affirm.

A summary of the facts and procedural history is as follows:

> On December 22, 2011, around 11:00 PM, Taihisha Henry [("Henry")] was at Mr. Dick's bar, located at 7[th] and Washington Streets in Allentown, Pennsylvania.  Henry's ex-boyfriend, [] Simpson, came into the bar and asked Henry for a ride to Bethlehem.  Henry refused, and [Simpson] "[c]alled [her] a bitch and pretty much stormed out, pissed off."[]  A few minutes later, one of the bouncers said, "[Henry], he's out there shooting at your car."[]  Henry went outside to her Ford Explorer and saw that the driver's window was shattered and saw a bullet hole in the driver's seat.  Henry then saw

[Simpson] walking towards her from the direction of his residence – Cookie's bar and rooming house – which was about one half block southwest of Mr. Dick's bar. Henry and [Simpson] began arguing. Henry asked [Simpson] why he shot out her car window, and [Simpson] told her to "shut the F up" and said the window would get fixed that night.[] Henry told her sister, Coral Smith [("Smith")], to go call the police, which Smith did. Eventually, Henry got on the phone with dispatch. While she was speaking to the dispatcher, [Simpson] threatened to kill Henry's family. Police arrived on the scene and [Simpson] started walking away from Henry.

Sergeant Alicia Conjour [("Sergeant Conjour")] of the Allentown Police Department (APD) responded to the area of Mr. Dick's Bar for a gunshot complaint. When she arrived, Sergeant Conjour observed a female standing in the middle of Washington Street screaming, "he's there, he's there," and pointing south on Morris Street. She also observed an SUV with a smashed out window. In the direction the woman was pointing, [Sergeant] Conjour observed a black male, wearing a black hoodie, walking north on Morris Street towards her direction. [Sergeant] Conjour drew her weapon and ordered the man, later identified as [] [Simpson], to the ground.

Officer Andrew Moll [("Officer Moll")] arrived soon after Sergeant Conjour, and observed [Sergeant] Conjour with her gun drawn and the defendant prone on his stomach. [Officer] Moll handcuffed [Simpson] and patted him down for weapons. No weapons were found. [Officer] Moll asked [Simpson] what was going on, and [Simpson] said [] Henry was mad at him because he was cheating on her.

[Simpson] subsequently consented to a search of his residence at Cookie's, which Sergeant Conjour recalled was Room 22. [Simpson] had keys to the front of Cookie's and unlocked the door for police. Inside a common bathroom under a vanity sink, police found a bag hidden, which contained a .38

caliber revolver and a sock. Inside the sock was a box of .380 caliber ammunition and electrical tape.[] The gun's trigger was wrapped in electrical tape. [Sergeant] Conjour cleared the gun and discovered the ammunition was also wrapped in electrical tape. One spent shell and three live shells were taken into evidence.[] Police also found electrical tape in [Simpson's] room. Additionally, Officer Moll removed a spent bullet fragment from the driver's seat of the Ford Explorer. Pennsylvania State Trooper Mark A. Garrett [("Corporal Garrett")], an expert in the field of firearms and tool mark examinations, testified to a reasonable degree of scientific certainty that the spent bullet and spent shell were fired from the gun. No fingerprints were recovered in connection with this case.

Trial Court Opinion, 2/11/15, at 2-4 (footnotes omitted).

Simpson was charged with terroristic threats, 18 Pa.C.S.A. § 2706(a)(1), and persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a)(1). On April 22, 2013, Simpson waived his right to a jury trial. A non-jury trial was held on April 24, 2013. At the conclusion of trial, the trial court found Simpson not guilty of terroristic threats, but guilty of persons not to possess a firearm.

On May 6, 2013, Simpson filed a motion for new trial and arrest of judgment. The trial court denied Simpson's motion without prejudice on May 22, 2013. On May 23, 2013, the trial court sentenced Simpson to a term of five to ten years of incarceration. The trial court also appointed the public defender's office to represent Simpson in post-sentence matters.

On June 25, 2013, the Deputy Public Defender, Attorney John F. Baurkot ("Attorney Baurkot"), filed a Motion to Reconsider Nunc Pro Tunc, which the trial court denied on July 1, 2013. On December 16, 2013, Simpson filed a pro se notice of appeal. Conflicts counsel was appointed and on February 24, 2014, Attorney Sean Poll ("Attorney Poll") discontinued Simpson's pro se notice of appeal.

On May 19, 2014, Attorney Poll filed a petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541 et seq. In the petition, Attorney Poll alleged that Attorney Baurkot provided ineffective assistance of counsel by failing to file a direct appeal. The trial court granted the PCRA petition on July 8, 2014 and reinstated Simpson's direct appeal rights, nunc pro tunc.

On July 22, 2014, Simpson filed the instant appeal.[1] On appeal, Simpson raises the following issue for our review:

> Did the [t]rial [c]ourt err in returning a verdict of
> guilt when such a verdict was not supported by

---

[1] On August 29, 2014, Simpson filed a petition for extension of time for filing a concise statement of reasons complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, claiming that the notes of testimony from trial had not yet been transcribed. The trial court granted Simpson's appeal, ordering him to file his statement by September 15, 2014. Simpson filed a second petition for an extension of time on September 15, 2014, asserting that he had still not received the notes of testimony. The trial court denied the petition. On November 5, 2014, Simpson filed with this Court a petition to remand the case to the trial court. On November 25, 2014, this Court issued an order remanding the case to the trial court and granting ninety days for the production of the transcript, filing of a 1925(b) statement, and a 1925(a) opinion.

sufficient evidence so as to prove [Simpson] guilty of
Persons Not to Possess, Use, Manufacture, Control,
Sell or Transfer Firearms?

Simpson's Brief at 4.

In reviewing Simpson's claim that the Commonwealth failed to present

sufficient evidence to convict him of persons not to possess a firearm, we

are mindful of our well settled standard of review:

> The standard we apply in reviewing the sufficiency of
> the evidence is whether viewing all of the evidence
> admitted at trial in the light most favorable to the
> verdict winner, there is sufficient evidence to enable
> the fact-finder to find every element of the crime
> beyond a reasonable doubt.  In applying [the above]
> test, we may not weigh the evidence and substitute
> our judgment for the fact-finder.  In addition, we
> note that the facts and circumstances established by
> the Commonwealth need not preclude every
> possibility of innocence.  Any doubts regarding a
> defendant's guilt may be resolved by the fact-finder
> unless the evidence is so weak and inconclusive that
> as a matter of law no probability of fact may be
> drawn from the combined circumstances.  The
> Commonwealth may sustain its burden of proving
> every element of the crime beyond a reasonable
> doubt by means of wholly circumstantial evidence.
> Moreover, in applying the above test, the entire
> record must be evaluated and all evidence actually
> received must be considered.  Finally, the trier of
> fact while passing upon the credibility of witnesses
> and the weight of the evidence produced, is free to
> believe all, part or none of the evidence.

***Commonwealth v. Helsel***, 53 A.3d 906, 917-18 (Pa. Super. 2012) (citing

***Commonwealth v. Bricker***, 41 A.3d 872, 877 (Pa. Super. 2012)). "This

standard is equally applicable in cases where the evidence is circumstantial,

rather than direct, provided that the combination of evidence links the

- 5 -

accused to the crime beyond a reasonable doubt." ***Commonwealth v. Orr***, 38 A.3d 868, 873 (Pa. Super. 2011) (citing ***Commonwealth v. Cox***, 686 A.2d 1279, 1285 (Pa. 1996), *cert. denied*, 522 U.S. 999 (1997)).

In this case, the trial court found Simpson guilty of persons not to possess a firearm, which provides, in relevant part:

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

At trial, Simpson stipulated that he is not eligible to possess a firearm, and therefore, "does not challenge that the element of a prior enumerated conviction has [] been met." Simpson's Brief at 12. The crux of Simpson's argument on appeal is that the Commonwealth failed to prove that he possessed a firearm on the night in question. Simpson argues, and the Commonwealth concedes, that Simpson was not physically in possession of the handgun at the time of his arrest. ***See id.***; Commonwealth's Brief at 6. Thus, in order to establish the possession element of section 6105(a)(1), the Commonwealth was required to establish that Simpson constructively possessed the handgun. ***See Commonwealth v. Hopkins***, 67 A.3d 817,

- 6 -

820 (Pa. Super. 2013) ("As appellant was not in physical possession of the contraband, the Commonwealth was required to establish that he had constructive possession of the seized items to support his convictions.").

Simpson asserts that the Commonwealth failed to establish constructive possession because there was insufficient evidence "to tie him to the hand gun found in the common bathroom." *Id.* at 13-14. Simpson specifically alleges that "the handgun was found in a common bathroom shared by approximately ten (10) different rooms in a boarding house. The bathroom did not have a lock on the door so anyone that was in the building could access the bathroom." *Id.* at 13. After our review of the record, we conclude that Simpson's arguments are unavailing.[2]

This Court has established that

> [c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances."

---

[2] Simpson's reliance on **Commonwealth v. Stanley**, 401 A.2d 1166 (Pa. Super. 1979), is also unavailing as he relies upon the dissenting opinion, which is not binding authority.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quoting *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal citations omitted)).  "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."  *Brown*, 48 A.3d at 430 (citing *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007)).  Moreover, this Court has held that "[t]he fact that another person may also have control and access does not eliminate the defendant's constructive possession[.]"  *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996).

In this case, the Commonwealth presented the testimony of several members of the APD in support of its case that Simpson possessed the gun. Officer Brubaker testified that he transported Simpson to his housing unit at Cookie's, whereupon Simpson "gave [them] the keys to his -- to the main door to get into the building and to his apartment."  N.T., 4/24/13, at 81. Officer Brubaker further testified that Simpson "signed a consent for [them] to check his apartment for a firearm[,]" which Simpson identified as Apartment 22. *Id.* at 81-82.

Sergeant Conjour testified that they searched the bathroom, which was a common bathroom for the entire apartment floor.  *Id.* at 42.  The bathroom did not require a key for access.  *Id.*  Sergeant Conjour testified that they discovered a .38 caliber gun in the bathroom in a hole in a wall

that was accessible from the inside of the sink vanity.  *Id.* at 25-26.  The gun was not immediately visible.  *Id.* at 44.  The officers also discovered in the same hole a tube sock that contained a box of .380 ammunition and a roll of electrical tape.  *Id.* at 26.

Sergeant Conjour testified that when she attempted to clear the gun, she discovered that there were three live bullets and two spent shells in the gun's chamber.  *Id.* at 27-28.  The ammunition was wrapped in electrical tape, presumably so that the ammunition would fit in the cylinder because .380 ammunition is smaller than what a .38 takes, and there was electrical tape on the trigger of the gun.  *Id.* at 27-28, 29.  Sergeant Conjour testified that in addition to the electrical tape found in the hole in the bathroom, officers found electrical tape in Simpson's bedroom.  *Id.* at 29.  Henry also testified that she previously saw Simpson with a revolver that had black tape on it.  *Id.* at 61.

Trooper Moll testified that he removed the bullet fragment from Henry's seat.  *Id.* at 115.  Corporal Garrett, whom the trial court recognized as "an expert in the field of firearms and tool mark examinations[,]" examined the recovered gun, the three undischarged bullets, one discharged bullet, and one discharged cartridge case.  *Id.* at 98-100.  Corporal Garrett testified to a reasonable degree of scientific certainty that the discharged bullet from the vehicle he examined was discharged by the gun officers recovered from the bathroom at Simpson's residence.  *Id.* at 105. He further

testified that the cartridge case he examined was discharged by the firearm in question. *Id.*

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth presented sufficient evidence to establish constructive possession. When viewed in their totality, the facts establish a strong inference that Simpson possessed the weapon. Thus, we reject Simpson's challenge to the sufficiency of the evidence.

Judgment of sentence affirmed.

Bender, P.J.E. joins the Memorandum.

Mundy, J. concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2015