J-A20002-18

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| REGINALD GOOD, | |
| Appellant | No. 308 WDA 2017 |

Appeal from the Judgment of Sentence Entered January 9, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011539-2016

BEFORE:   BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                 FILED  NOVEMBER 20, 2018

Appellant, Reginald Good, appeals from the judgment of sentence of 3 years' probation, imposed following his conviction for possession of a firearm prohibited, 18 Pa.C.S. § 6015.  Appellant challenges the trial court's denial of his motion to suppress the seized firearm, the weight and the sufficiency of the evidence presented at trial, as well as the trial court's application of an ostensibly erroneous definition of constructive possession.   After careful review, we affirm.

Due to the trial court's failure to provide a detailed summary of the facts in this case, we adopt the factual summary provided by the Commonwealth, as we have determined that it accurately and comprehensively reflects the content of the trial transcript:

At approximately 6:30 p.m. on August 6, 2015, homicide detective Steven Hitchings of the Allegheny County Police convened with officers from the City of Pittsburgh Police and from state parole in an attempt to locate and arrest Joshua Strayhorn, an individual for whom there was an arrest warrant for unauthorized use of an automobile and whom the officers also wished to speak to with regard to an open homicide investigation. Given that Strayhorn was on parole and wearing a GPS ankle bracelet, the officers knew that he was on the city's North Side in the vicinity of Shadeland Avenue. A very short time later, police received specific information from surveillance units that Strayhorn had been seen entering a residence located at 2927 Shadeland. Officers proceeded to that location and surrounded the house as Detective Hitchings knocked on the front door. The door was answered by Cassandra Good, one of the co-defendants in this matter. Detective Hitchings informed her that officers were there to arrest Strayhorn, and Ms. Good allowed them into her residence. Strayhorn then appeared in the kitchen/dining-room area and was taken into custody.

Detective Hitchings asked Ms. Good for her permission to go through the house, and she consented. Because Detective Hitchings had been the first one in the door, he moved upstairs to clear that area for officer-safety purposes while other officers went down to the basement to make that particular area safe. While upstairs, Detective Hitchings encountered a locked door. Ms. Good, who had also come up to the second floor, provided Detective Hitchings with a key to the lock. Detective Hitchings proceeded to the third floor, where he observed a "mound" of suspected cocaine in plain view on a bedroom dresser. Detective Hitchings reported the presence of the cocaine to Pittsburgh [P]olice [O]fficer Paul Abel and then left the scene.

While Detective Hitchings had gone upstairs, Pittsburgh [P]olice [O]fficer Joseph Barna went to the basement to clear that area of any possible persons for officer safety. There, Officer Barna encountered Derrick Thompson, another co-defendant, who was seated in a small recording studio that contained a computer screen, some speakers and a small table area. Officer Barna noticed a firearm inches in front of Thompson at the table. The officer handcuffed Thompson for safety purposes and brought him upstairs. As he walked Thompson up the basement stairs, Officer Barna could see the extended magazine of another firearm protruding from the ceiling above the steps; he also saw a blue

plastic grocery bag sitting next to it, inside of which he was able to observe several suspected bricks of heroin.

Officer Barna notified Officer Abel of his findings and took him down to the basement to show him the location of the two guns and the heroin. Officer Abel left to secure a search warrant for the premises and returned at 8:26 p.m. after the warrant was signed by a magistrate. In effectuating the warrant, Officer Barna returned to the basement and recovered the Star .45-caliber firearm that had been sitting on the table in front of Thompson inside the recording studio; the gun was loaded with six .45-caliber bullets as well as one in the chamber. He also recovered from that table a purple "stun gun," two digital scales and a small amount of marijuana. Officer Barna then proceeded to retrieve the black Beretta 9–millimeter that had been protruding from the ceiling above the basement stairs—the gun was loaded with 28 rounds—and the five bricks of heroin that were next to it in the blue grocery bag.[2] Officer Jeffrey Tomer of the Pittsburgh Police, who helped Officer Barna with the execution of the search warrant in the basement, also found an additional eight bricks of heroin in a different gap in the ceiling.

[2] The two firearms and the stun gun were all determined to be operational.

After his search of the basement was concluded, Officer Barna went up to search the third floor with Officer Abel and discovered 10 bricks of heroin—500 stamp bags—under a pillow in the same bedroom that Detective Hitchings had observed the cocaine on top of the nightstand. Officer Abel seized the drugs, as well as two brand-new Samsung flip phones that were also in the bedroom. Indicia of residence for Reginald Good—Cassandra Good's son and [A]ppellant in this matter—was found in that same bedroom, the most recent of which was a piece of mail postmarked July 27, 2015, approximately 10 days before the date in question. [A]ppellant had not been present at the time that the search warrant was executed, but as Ms. Good was being escorted to a police vehicle for transport, [A]ppellant came running down the street, yelling, "Don't take my ma. Take me. Take me[."] [A]ppellant was himself taken into custody at that point as well.

In total, nine cellphones were recovered from the entirety of the residence, including one that was located in Ms. Good's purse. The purse, which had been located in the dining room, also contained a napkin with marijuana inside of it. It was determined

that Ms. Good had begun renting 2927 Shadeland Avenue about three years earlier. A search of her second-floor bedroom revealed nearly $7,500 in cash in one of the closets—it consisted of 16 one-hundred-dollar bills, 16 fifties, 252 twenties and eight ones. She told the officers that it was her "baby-sitting money." In total, the police recovered 1,153 stamp bags of heroin from the residence. The Commonwealth's expert, Sergeant Neal Marabello of the Pittsburgh Police, concluded that such a large quantity of drugs, when considered in relation to the large amount of money that was found inside the house, the firearms and the nine cellphones, was possessed not for personal use but, rather, for the purpose of sale. [A]ppellant was a person not to possess a firearm as a result of two prior felony drug convictions, including a May 2005 federal conviction for conspiracy to distribute heroin.

Commonwealth's Brief at 2-7 (footnote and citations omitted).

The Commonwealth charged Appellant at CP-02-CR-0015858-2015 ("15858-2015") with two counts of person not to possess a firearm, 18 Pa. C.S. § 6105(a)(1); one count of possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30); two counts of possession of a controlled substance, 35 P.S. § 780-113(a)(16); and one count of possession of a small amount of marijuana, 35 P.S. § 780-113(a)(31). Appellant joined his co-defendant/mother, Ms. Good, in filing a motion to suppress the seized contraband. The trial court held the suppression hearing on May 16, 2016. The trial court denied that motion just prior to trial, which began on September 28, 2016.

Prior to trial, the Commonwealth withdrew one of Appellant's firearm counts[1] as well as the marijuana charge. The trial court tried Appellant jointly

_____

[1] Thus, Appellant was tried only for the firearm that was located in the ceiling above the basement stairs, and not for the firearm discovered next to Mr. Thompson.

with his co-defendants, Ms. Good and Mr. Thompson. The parties agreed to sever Appellant's firearm charge from his drug charges; as such, Appellant was tried non-jury for the firearm offense at CP-02-CR-0011539-2016 ("11539-2016"), but proceeded simultaneously to a jury trial for the remaining counts at 15858-2015. On October 3, 2016, the final day of trial, the trial court found Appellant guilty of the firearm offense at 11539-2016, while the jury acquitted him of all counts at 15858-2015. On January 9, 2017, the trial court sentenced Appellant to 36 months' probation.

Appellant filed a timely, omnibus post-sentence motion on January 17, 2017. The motion both sought judgment of acquittal based on the insufficiency of the evidence, and set forth a claim for a new trial based on the weight of the evidence. The trial court denied the motion for a new trial on January 25, 2017, and denied the outstanding motion for judgment of acquittal on February 2, 2017. Appellant then filed a timely notice of appeal on February 15, 2017. He also filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on April 10, 2017. The trial court issued its Rule 1925(a) opinion nearly a year later, on February 22, 2018.

Appellant now presents the following questions for our review:

I. Whether the trial court erred in admitting evidence seized from Appellant's mother's home pursuant to an unlawful and unconstitutional entry into the residence followed by an improper and unauthorized search?

II. Whether the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that Appellant possessed a firearm?

III. Whether the trial court erred when it applied a defin[i]tion of "possession" and/or "constructive possession" that is not recognized by law?

IV. Whether Appellant's conviction was against the weight of the evidence?

Appellant's Brief at 11 (unnecessary capitalization omitted).

Appellant first asserts that the trial court should have suppressed the seized contraband as the fruit of an unconstitutional entry and search of his mother's home. Appellant concedes that the police ultimately obtained a search warrant, however, he claims that the search warrant was obtained based the police's "observations of weapons during their initial and unlawful entry into to the house." Id. at 25. Appellant acknowledges that police initially entered the house pursuant to an arrest warrant. Yet, the police quickly apprehended the target of that warrant upon entry, and before they discovered any contraband. Appellant argues that the subsequent protective sweep by the police was not justified given that they had already seized the target of the arrest warrant and, therefore, any reasonable fear for their safety contemporaneously subsided. Id. at 28. Alternatively, Appellant contends that, even if were reasonable for the police to conduct a protective sweep in the immediate vicinity of the arrest, it was not reasonable to search the basement and third floor.

The trial court found that that the discovery of the contraband in question by police was lawful pursuant to the protective sweep exception to the warrant requirement, and because Ms. Good consented to that search. Trial Court Opinion ("TCO"), 2/22/18, at 4-5. In its brief to this Court, the

Commonwealth focuses its argument on Ms. Good's consent, seemingly abandoning the protective sweep justification offered by the trial court. The Commonwealth contends that Ms. Good first verbally consented to the police's search of her home for the fugitive Joshua Strayhorn. Commonwealth's Brief at 19.

Another panel of this Court, in Commonwealth v. Cassandra Good, No. 229 WDA 2017, unpublished memorandum at 7-17 (Pa. Super. filed October 31, 2018), held that the search conducted after Joshua Strayhorn was apprehended was not justified as a protective sweep, id. at 10-12, but that it was lawfully conducted pursuant to Ms. Good's consent, id. at 13-17. We are compelled to follow that decision under the law of the case, as Appellant's suppression claim is identical to the claim addressed in that decision.[2] Indeed, Appellant joined Ms. Good's suppression motion at the suppression hearing. See N.T. Suppression, 5/16/16, at 20.

As noted by the panel in Cassandra Good, the consent-to-search issue turned on the credibility determinations made by the trial court. Cassandra Good, No. 229 WDA 2017 at 15-16. Detective Hitchings testified that verbal

_____

[2] "An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding." 210 Pa. Code § 65.37 (Internal Operating Procedures of the Superior Court of Pennsylvania) (emphasis added).

consent was given by Ms. Good to search the rest of her home. He stated that, at the time, Ms. Good "was cordial and respectful and understanding, and she allowed us to continue to search the residence for other people." N.T. Suppression at 54.

> Although ... the court did not set forth specific credibility determinations, it is evident the court found the testimony of Detective Hitchings credible because the court concluded [Ms.] Good "was asked if police could go through her home, and she approved without objection." Trial Court Opinion, 6/22/2017, at 4. [Ms.] Good, herself, testified the detective never asked for her consent to search, but rather, after the officer took Strayhorn out, "[a]ll of them" entered her home and began to look around. N.T. [Suppression] at 93. By concluding Good verbally consented to the search, the court necessarily credited Detective Hitchings' testimony. Based upon our standard of review, we are bound by this factual finding.

Cassandra Good, No. 229 WDA 2017 at 15-16. Accordingly, we conclude that Appellant's suppression claim lacks merit.

Appellant's second and third claims are related. Appellant asserts that there was insufficient evidence to convict him of possession of a firearm. The firearm in question was found in the ceiling between the basement and the first floor in the vicinity of co-defendant Derrick Thompson, whereas the indicia of Appellant's residency was found in a locked room on the third floor. Appellant also claims that, in finding the evidence of possession of a firearm to be sufficient, the trial court erred by utilizing an incorrect definition of 'constructive possession.'

Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

The at-issue firearm was not found in Appellant's immediate possession. However, Appellant concedes that a conviction for a possession offense may be predicated on the concept of 'constructive possession.' Appellant's Brief at 33.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

Commonwealth v. Brown, 48 A.3d 426, 430 (Pa. Super. 2012) (quoting Commonwealth v. Parker, 847 A.2d 745, 750 (Pa. Super. 2004)).

Nevertheless, Appellant argues that the Commonwealth failed to prove constructive possession because

the facts of the case establish no evidence that supports Appellant's conviction[]: the firearm in question was found located in an opening between the ceiling of the basement and the floor

of the first floor in a stair well leading to the basement; at the time police made entrance to the residence, three adults and two juvenile teenage males were present, including Joshua Strayhorn, a man wanted for questioning in connection to a homicide and [who,] importantly, emerged from the area in which the firearm was found; that a large amount of indicia for Darwin Good was found at the residence, although he was not present at the time the police were present; that a second firearm was found within inches of Derek Thompson in the basement of the residence; that at the time police made entrance to the residence, Appellant was not present; that Appellant arrived at the residence approximately three hours after the police had made contact with the residence; that upon Appellant's arrival and seeing his disabled mother being arrested, [Appellant] yelled[,] "Don't take my ma, take me, take me[;"] that five unopened pieces of mail addressed to Appellant were found in a third-floor bedroom; that other than the five pieces of mail, no other evidence produced suggested Appellant lived ... or resided at the residence; that an amount of heroin and cocaine was found in the same third floor bedroom as the five pieces of mail; that all individuals present at the time of police contact had access to the entirety of the residence[,] especially the area in which the firearm was located; and that at the time police were present, Appellant had no ability to access the residence.

Appellant's Brief at 34-35.

The trial court's analysis of Appellant's sufficiency claim is negligible. The court merely states that it "was satisfied that [Appellant] unlawfully possessed the firearms located in the basement of the residence." TCO at 6.[3] Nevertheless, the Commonwealth insists that the evidence was sufficient to establish Appellant's constructive possession of the firearm. Essentially, the Commonwealth contends that Appellant's constructive possession of the

_____

[3] In its Rule 1925(a) opinion, the court did recite facts that were sufficient to establish Appellant's residence in the home, and his status as a person unable to lawfully possess a firearm. Lacking, however, was any significant analysis of why or how constructive possession principles applied in the circumstances of this case. The court also failed to cite any case law in support of its decision.

- 10 -

firearm was supported by evidence linking him to the heroin distribution operation that was occurring at 2927 Shadeland Avenue. First, the evidence supported the conclusion that Appellant resided in the home, as five pieces of his mail were found in the third-floor bedroom. Second, in that same bedroom, police discovered 10 bricks of heroin and two cellphones. Third, the firearm found in the basement ceiling was discovered right next to five additional bricks of heroin. Finally, the Commonwealth believes that Appellant's statement to police when he arrived, taken in a light most favorable to the prosecution, constituted an admission of his involvement in the drug-distribution operation. Based on the totality of these circumstances, the Commonwealth argues that there was sufficient evidence to establish Appellant's constructive possession of the firearm because the evidence supported his participation in the drug-distribution operation.

Appellant cites Commonwealth v. Boatwright, 453 A.2d 1058 (Pa. Super. 1982), in support of his claim. In Boatwright, police responded to a tip about three suspicious men in an automobile. When they arrived on the scene, they observed the defendant in the front passenger seat. There were two other individuals present in the vehicle, one located in the driver's seat and the other in the back seat. Police observed the defendant's body moving to the left-rear of the vehicle, where, soon thereafter, they discovered a firearm. The defendant was convicted of a firearm offense based on his constructive possession of that firearm. We reversed, reasoning:

> Because the firearm was not found on [Boatwright's] person, he could properly be convicted only if the Commonwealth proved joint constructive possession with the other occupants of the vehicle. To do this, the Commonwealth must present evidence to show that [Boatwright] had both the power to control the firearm and the intent to exercise that control. Mere presence at the scene where the gun was found is not sufficient. The only evidence other than mere presence was [an officer's] testimony that [Boatwright] made a movement toward the left rear of the vehicle. This evidence cannot provide proof beyond a reasonable doubt that [Boatwright constructively] possessed the firearm in question.

Boatwright, 453 A.2d at 1059 (citations omitted).

We agree with the Commonwealth that Boatwright is not controlling in this instance. Simply put, the facts of that case are not analogous to the instant matter. Instead, we agree with the Commonwealth that the instant case is more akin to the (relatively) more recent case of Commonwealth v. Santiesteban, 552 A.2d 1072 (Pa. Super. 1988). In Santiesteban, police searched the defendant's home pursuant to a warrant. The defendant was located in a second-floor bedroom near large amounts of cash found in a briefcase, a closed metal box, and his pants. On the first floor, police discovered an ounce of cocaine and distribution paraphernalia (plastic baggies, a scale, and a grinder with cocaine residue). Other evidence established that two other men had equal access to the first floor. One of those men testified that he and the other man had used the first floor to shoot up cocaine in the four weeks prior to the search, and that the defendant had just moved into the house.

This Court upheld Santiesteban's conviction for possession of the cocaine on constructive possession principles, reasoning that the defendant "had both access and control of the first floor where the contraband was found. From this, as well as other circumstantial evidence, including the large amount of cash in [his] bedroom, the jury could infer constructive possession even though evidence directly connecting the defendant with the contraband is lacking." Santiesteban, 552 A.2d at 1075.

Here, Appellant's connection to the third-floor bedroom was established through his mail. Moreover, the presence of heroin and two cellphones in that room linked him to the other heroin found in the same home, and, by extension, the firearm found next to the heroin hidden in the basement ceiling. It can be reasonably assumed that Appellant's residence on the third floor, and the fact that his mother rented the home, gave him equal access to the basement, establishing his power to control that firearm. The evidence linking Appellant to the heroin distribution operation further demonstrated that he had the intent to control the firearm – that is, a reasonable inference could be drawn, from his participation in that illegal enterprise, that he was both aware of the firearm to which he had equal access (power to control), and that he intended to possess it in furtherance of that operation (intent to exercise control). See Brown, supra. Thus, we conclude that the totality of the

circumstances in this case provided sufficient evidence to convict Appellant of 18 Pa.C.S. § 6105 based on a theory of constructive possession.[4,5]

With regard to Appellant's assertion that the trial court applied an incorrect definition of constructive possession, we deem this issue moot given our above determination that the evidence was sufficient to establish his constructive possession of the firearm under the correct definition of that standard, and the precedent set by Santiesteban. Appellant's status as a person not to possess a firearm is not a relevant circumstance or factor in determining whether he constructively possessed the at-issue weapon. However, the evidence was sufficient to establish his constructive possession of that firearm in the absence of that erroneous assumption. Accordingly, Appellant is not entitled to relief on that basis.

Finally, Appellant contends that his conviction was against the weight of the evidence and, therefore, the trial court abused its discretion by denying

_____

[4] We decline to address the Commonwealth's assertion that Appellant's statement to police upon his arrival constituted an admission of guilt. Rather, we conclude that the evidence was sufficient to establish his constructive possession of the firearm without that evidence.

[5] We recognize that this theory of guilt appears to be incompatible with the jury's verdict, since the jury acquitted Appellant of all drug-related charges. However, the trial court's role as factfinder with respect to the firearm offense was not constrained by the jury's verdict. See Commonwealth v. Miller, 35 A.3d 1206, 1213 (Pa. 2012) (reaffirming that "even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal").

his post-sentence motion for a new trial on that basis.  We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered.  In describing the limits of a trial court's discretion, we have explained:
>
>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge.  Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions.  Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

- 15 -

We ascertain no abuse of discretion in the trial court's decision to deny Appellant's motion for a new trial based on the weight of the evidence. We acknowledge that the evidence of Appellant's guilt in this case was far from overwhelming; however, an abuse of discretion is not established merely because this Court might have drawn different inferences or reached a different conclusion than the trial court when presented with the same facts. Id. ("A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion."). Thus, Appellant's final claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2018