**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Taheir Jermaine BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 2012.
Filed June 6, 2012.
Reargument Denied Aug. 17, 2012.

Elizabeth M. Ebner, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, J., and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:

Taheir Jermaine Brown (Appellant) appeals from the judgment of sentence of three to five years' incarceration for his convictions for possession of a controlled substance and possession with intent to deliver a controlled substance (PWID).[1] We affirm.

The trial court summarized the facts of the case as follows.

On February 26, 2009, Trooper Brian R. Overcash (Trooper Overcash) was conducting interdictions at a Federal Express facility in Reading, Pennsylvania as part of his duties as a Pennsylvania State Trooper. Trooper Overcash pulled two suspicious packages from the

---

* Retired Senior Judge assigned to the Superior Court.

1. 35 P.S. § 780–113(16) and (30), respectively.

line of parcels. The packages were shipped from a company called Southern Charm in Auburn, Washington. The two boxes were being sent to April Newmann at 1431 Palm Street, Reading, Pennsylvania, a residential address in the City of Reading. Trooper Overcash brought in a canine unit and conducted a lineup of several packages, including the suspicious two from Washington State. The dog alerted on both parcels indicating that he detected an odor of some form of illegal substance.

After obtaining a search warrant for the boxes, Trooper Overcash opened the two parcels and found marijuana covered in black plastic wrapping. The first package weighed 16.8 pounds and the second package weighed 15.0 pounds for a total combined weight of 31.8 pounds.

Trooper Overcash, along with several members of the Reading Police Vice Unit, set up a controlled delivery of the two packages. Trooper Todd Rudy (Trooper Rudy) posed as a FedEx delivery driver and took the two parcels to the delivery address at 1431 Palm Street in Reading. Trooper Rudy wore a FedEx uniform and drove a van with magnetic FedEx labels. When Trooper Rudy arrived at the delivery address around 12:30 pm, he rang the doorbell. When no one answered, Trooper Rudy knocked on the front door. [Appellant] answered the front door. Trooper Rudy stated that he had a delivery for the Newmanns. [Appellant] identified himself as Taheir Brown and stated that he would accept the packages for the Newmanns. Trooper Rudy apologized for the packages being late. [Appellant] replied that he had been waiting for the packages, but was not expecting them until 12:30 pm.

Trooper Rudy returned to his vehicle to change and assist Reading police with the search of [Appellant]'s home. By the time Trooper Rudy returned to the scene, approximately fifteen minutes after the delivery, Reading Police Officers from the Vice Unit had already made entry into the home. Trooper Rudy found one of the boxes of marijuana had already been covered with a blanket and stowed away in an upstairs linen closet. [Appellant] claims he hid the box so his two-year-old son would not damage the parcel. The second box was still on the living room floor.

Criminal Investigator Leporace (Investigator Leporace) testified for the Commonwealth as an expert witness. Investigator Leporace opined that the marijuana recovered from the two boxes in [Appellant's] home on February 26, 2009 were possessed with intent to deliver. Investigator Leporace testified that, in his experience, dealers do not ship large amounts of controlled substances to the same place where the drugs are repackaged for sale. "[I]t's a dangerous endeavor to have a package delivered to a residence where you have your whole operation because if a package gets taken off, like this, you don't want your own operation to be taken over or to be found." Investigator Leporace reported that the lack of any drug paraphernalia found in Mr. Brown's house did not influence his opinion. Rather, it supports the theory that [Appellant] was part of a larger operation and possessed the 31.8 pounds of marijuana with the intent to deliver.

On the witness stand, Investigator Leporace noted that the marijuana was high-end marijuana, not regular marijuana, as he initially suspected. Investigator Leporace estimated that high-end marijuana would sell for two hundred and eighty thousand dollars ($280,000)

on the streets of Reading, at twenty dollars per gram.

[Appellant] introduced three character witnesses who testified regarding [Appellant's] reputation in the community as a law-abiding citizen. Robert Hyland testified as [Appellant's] first character witness. [Appellant] worked as a server in the dietary department of a residential care and nursing home under the supervision of Mr. Hyland. Mr. Hyland testified that approximately twenty-five residents in this facility still knew [Appellant] at the time of trial and would say he has a reputation for being a law-abiding citizen. Mr. Hyland, however, did not socialize with [Appellant] outside of work, neither did any of the residents. Mr. Hyland stated that he formed his opinion of [Appellant's] reputation by asking residents about [Appellant's] assistance, not specifically regarding [Appellant's] ability to follow the law.

The defense next presented Claudia Johnson–Miller as a character witness for [Appellant]. Ms. Johnson–Miller had known [Appellant] for six years and was a close friend of [Appellant's] stepmother. Ms. Johnson–Miller testified that [Appellant] has a reputation for law-abiding behavior. The third character witness for [Appellant] was Ernest Shobe. Mr. Shobe testified that he has known [Appellant] for three years and, at the time of trial, was engaged to [Appellant's] cousin. Mr. Shobe testified that he was not aware of [Appellant's] reputation in the community, but family members speak highly of him.

Trial Court Opinion (TCO), 11/29/2011, at 2–5 (citations and footnotes omitted).

On June 1, 2011, a jury found Appellant guilty of possession of a controlled substance and PWID, but not guilty of posses-

sion of a small amount of marijuana.[2] Appellant was sentenced as detailed above on July 19, 2011. Appellant filed a timely post-sentence motion, which was denied by order of August 1, 2011. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two questions for our review:

1. Whether the evidence presented at trial is insufficient to establish each element of possession with intent to deliver a controlled substance and possession of a controlled substance beyond a reasonable doubt because the Commonwealth failed to prove that [Appellant] was aware that marijuana was present in the parcels delivered to his residence on February 26, 2009 or that he intended to possess the contents of these parcels?

2. Whether the jury verdict of guilty to possession with intent to deliver a controlled substance and possession of a controlled substance is contrary to the weight of the evidence in that the verdict is so opposed to the facts presented at trial that the judicial conscience cannot let the result stand since the verdict is based solely on pure speculation and conjecture given that the only fact relied upon by the Commonwealth to show [Appellant] knew that the parcels delivered to his residence on February 26, 2009 contained marijuana is that he placed one of the boxes in a hallway closet and such minimal evidence cannot overcome the presumption that [Appellant] is a law-abiding citizen as established by his character witness testimony?

Appellant's Brief at 4 (trial court and suggested answers omitted).

**2.** 35 P.S. § 780–113(a)(31).

We first address Appellant's sufficiency of the evidence challenge, mindful that our standard is to

> determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Newton*, 994 A.2d 1127, 1131 (Pa.Super.2010) (quoting *Commonwealth v. Pruitt*, 597 Pa. 307, 951 A.2d 307, 313 (2008)) (citations omitted). The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. *Commonwealth v. Markman*, 591 Pa. 249, 916 A.2d 586, 598 (2007).

To sustain a conviction for the crime of possession of a controlled substance, the Commonwealth must prove that Appellant knowingly or intentionally possessed a controlled substance without being properly registered to do so under the Act. *See* 35 P.S. § 780–113(a)(16). The crime of possession of a controlled substance with intent to deliver requires the Commonwealth to prove an additional element: that Appellant possessed the controlled substance with the intent to manufacture, distribute, or deliver it. *See* 35 P.S. § 780–113(a)(30).

Because Appellant was not found with contraband on his person, the Commonwealth was required to establish that Appellant had constructive possession of the seized items to support his convictions. *See Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super.2003).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super.2004) (internal citations omitted).

Here, the element of the offenses that Appellant challenges is that of knowledge or intent to have possessed the marijuana.[3] Appellant claims that the Commonwealth presented no evidence that he was aware that the packages contained marijuana or intended to exercise control over the marijuana. Appellant's Brief at 15. Appellant argues that the facts of the instant case are indistinguishable from those in *Commonwealth v. Sterling*, 241 Pa.Super. 411, 361 A.2d 799 (1976), and *Commonwealth v. Rambo*, 488 Pa. 334, 412 A.2d 535 (1980), where it was held that the evidence was insufficient to prove knowledge.

---

**3.** Intent to deliver the drugs may be inferred from the large quantity of marijuana involved. *See Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa.Super.2008). As the trial court noted, the Commonwealth's expert testified that it would take a single person three years and four months to consume personally the 31.8 pounds of marijuana if he or she "smoked a joint every two hours and didn't sleep." TCO, 11/29/2011, at 3 n. 7.

In *Sterling*, officials discovered a large quantity of hashish in a package addressed to a third party, care of Sterling; obtained a warrant to search Sterling's home; and arranged delivery with the postal carrier. 361 A.2d at 800. Police observed Sterling retrieve the package from his mailbox, executed the warrant 45 minutes later, and discovered the package unopened in the kitchen. *Id.* at 800–801. Although Sterling denied knowledge of the contents of the package, a jury convicted him of PWID. This Court ordered Sterling discharged on the PWID charge, holding that, while the evidence showed that he exercised conscious dominion over the package, there was insufficient evidence to establish that he exercised conscious dominion over the hashish. *Id.* at 802.

Similarly, in *Rambo*, authorities discovered a large amount of hashish in packages addressed to Rambo and his girlfriend at Rambo's residence, obtained a warrant to search Rambo's apartment, and conducted a controlled delivery of the packages. 412 A.2d at 536–537. Rambo accepted and signed for the packages and left the apartment. *Id.* at 537. Police executed the warrant 45 minutes later, and found the packages unopened on the floor of the apartment. *Id.* Rambo was convicted of PWID, and this Court affirmed, distinguishing the case from Sterling in that (1) a package was addressed to Rambo, not merely c/o Rambo, suggesting that he was expected to open it; and (2) that Rambo signed for the packages suggested that he was expecting them. *See Commonwealth v. Rambo*, 250 Pa.Super. 314, 378 A.2d 953, 956 (1977) (*en banc*), *reversed by Commonwealth v. Rambo*, 488 Pa. 334, 412 A.2d 535 (1980). Our Supreme Court disagreed with the import of those distinctions, and held that Rambo must be discharged because the Commonwealth failed to produce sufficient evidence to prove beyond a reasonable doubt that Rambo knew that the packages contained hashish. 412 A.2d at 538.

In the instant case, the trial court held that the evidence was sufficient to sustain Appellant's conviction because of the following: (1) Investigator Leporace testified that it is common in drug transactions for contraband to be shipped to an individual at a location other than where it is reduced for street sales; (2) although the search revealed no indication that anyone named Newmann resided at the address, Appellant stated that he would accept the packages for the Newmanns; (3) the evidence that Appellant was expecting the packages was direct, in that he stated that he was expecting them, rather than merely suggested by his accepting them; and (4) Appellant concealed one of the packages in a closet under a blanket, suggesting that he knew there was reason to hide it. TCO, 11/29/2012, at 5–6.

We agree that these factual differences take this case out of the realm of *Sterling* and *Rambo*. Most importantly, that Appellant hid a package is a strong indicator of guilty knowledge, and a circumstance that was not present in *Rambo* or *Sterling*, where the recipients left the packages out in the open with ordinary, innocent deliveries. *See Commonwealth v. Mohamud*, 15 A.3d 80, 92 (Pa.Super.2010) (holding that, *inter alia*, Mohamud's "surreptitious behavior when he arrived at the UPS store to retrieve the package" supported finding that the Commonwealth's evidence was sufficient to prove knowledge of possession of an illegal substance). As such, we hold that Appellant is entitled to no relief based upon his first argument.

■■■■ Appellant next claims that the verdict was against the weight of the evidence. Our standard of review for weight of the evidence challenges is as follows.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict.... An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.

A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion....

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751–52 (2000) (footnote and citations omitted).

In arguing that his verdict is against the weight of the evidence, Appellant reiterates his claim that the determination that he had knowledge of the contents of the packages was reached by "pure speculation and conjecture." Appellant's Brief at 17. Appellant argues that, with the addition of the evidence Appellant produced of his character as a law-abiding citizen, the weight of the evidence "cannot support the balance shift from not guilty to guilty." *Id.*

The trial court disagreed, noting that it was within the exclusive province of the jury to assess the credibility of the witnesses and weigh the evidence accordingly. TCO, 11/29/12, at 6 (citing *Commonwealth v. McCalman*, 795 A.2d 412, 415 (Pa.Super.2002)). Further, after reviewing the record in the case, the trial court determined that the verdict was not contrary to the evidence or shocking to the court. As we discern no abuse of discretion in this determination, Appellant is entitled to no relief based upon his weight claim.

Judgment of sentence affirmed.