J-S39029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAYMERE EDWARD STEVENS | : | |
| | : | |
| Appellant | : | No. 3442 EDA 2019 |

Appeal from the Amended Judgment of Sentence
Entered November 25, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004892-2018

BEFORE: LAZARUS, J., OLSON, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:　　　　　　　　**FILED OCTOBER 19, 2020**

Appellant, Traymere Edward Stevens, appeals from the November 25,

2019 amended judgment of sentence,[1] imposing an aggregate sentence of 48

to 96 months' incarceration after a jury convicted Appellant of possession of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered its judgment of sentence on November 7, 2019, but failed to include credit for time served. Thereafter, the trial court amended the judgment of sentence on November 25, 2019, to include credit for time served. **See** 42 Pa.C.S.A. § 5505 (permitting a trial court to amend the judgment of sentence within 30 days after its entry if no appeal of such order has been taken). A direct appeal in a criminal case properly lies from an amended judgment of sentence where the amended sentence is imposed by a court of competent jurisdiction. **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010), *relying on* **Commonwealth v. Wesley**, 889 A.2d 636 (Pa. Super. 2005). Appellant's appeal, therefore, properly lies from the November 25, 2019 judgment of sentence. The case caption has been corrected accordingly.

a controlled substance (heroin/fentanyl) with the intent to deliver, criminal

conspiracy to possess a controlled substance with the intent to deliver, and

tampering with physical evidence.[2]  We affirm.

The trial court summarized the factual history as follows:

On March [28], 2018[,] at approximately 4:30 [p.m., Trooper Matthew Brennan, a patrol member of the Pennsylvania State Police stationed at Troop K, Media Barracks in Delaware County, Pennsylvania,] was on patrol in the area of [U.S. Interstate Highway 95] ("I-95") near mile-marker 10.6.  He was in full uniform [and] in a marked patrol unit.  At that time, he was conducting a stationary patrol during rush hour.  As he was facing southbound traffic, he observed a blue 2002 Chrysler minivan with a paper temporary registration, flapping up and down.  Because he was unable to see the registration due to the movement of the unsecured temporary tag, Trooper Brennan decided to conduct a traffic stop on the vehicle.  Approximately a mile north of Exit 8, Trooper Brennan initiated the traffic stop.  The vehicle took 54 seconds to stop.  During that time[,] Trooper Brennan observed an individual in the rear passenger row of the minivan shoving things in the ceiling area.  The passenger reached up on three separate occasions.  These actions raised Trooper Brennan's suspicion that the individual was concealing something in the vehicle.  The vehicle eventually stopped on the right shoulder of Stewart Avenue, just off the Exit 8 ramp.  Trooper Brennan approached the stopped vehicle on the passenger side.  The [front passenger side] window was down[,] and Trooper Brennan could see into the passenger compartment.  Trooper Brennan made contact with the front passenger[,] who he could see clearly from a distance of about one foot.  Trooper Brennan made an in-court identification of [Appellant] as the individual seated in the front passenger seat.  Trooper Brennan asked how he was doing. [Appellant] turned towards Trooper Brennan and asked him how he was doing.  During their interaction[,] which lasted from 10 to 30 seconds, [Appellant] had his face towards Trooper Brennan. When [Appellant] would not show Trooper Brennan his left hand, Trooper Brennan attempted to [remove Appellant from] the

_____

[2] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. §§ 903 and 4910, respectively.

vehicle for officer safety reasons. At that point[,] Trooper [Brennan reached into the vehicle with his left arm through the passenger side window of the vehicle]. The driver then fled at a high rate of speed as Trooper [Brennan was reaching into the vehicle with his left arm]. Trooper Brennan immediately ran back to his patrol vehicle and pursued the Chrysler minivan. The [two vehicles] engaged in a high-speed chase. Trooper Brennan briefly lost sight of the [minivan] as it sped away from him and turned right onto Sellers Avenue. Once [Trooper Brennan turned his vehicle onto Sellers Avenue,] Trooper Brennan observed the [minivan] for the [remainder] of the pursuit. Trooper Brennan testified about the details of the pursuit with references to maps and narrated a video recording of the chase made by the [mobile video recording ("MVR")] system in his patrol unit. After the vehicle chase, Trooper Brennan was able, with the aid of local police, to stop the [minivan] and apprehend the driver. When the [minivan] was finally stopped, the only occupant [in the vehicle] was the driver, a female. The male passenger was not in the vehicle. Trooper Brennan then radioed [] a brief description of the front passenger to supporting [police] units [in the surrounding area]. Trooper Brennan radioed [that] the suspect was a black[,] non-Hispanic male wearing jeans. Shortly after the vehicle pursuit terminated, Trooper Brennan was notified by a fellow member of [the] state police that a pedestrian[-]stop had been made in the area of Seller[s] Avenue and Chester Pike [involving] an individual matching the brief description [Trooper Brennan provided]. Trooper Brennan traveled to that location and immediately knew the individual that was stopped was not [the passenger he observed in the minivan]. The pedestrian [] told Trooper Brennan he observed the [police] pursuit [of the minivan]. [The pedestrian] observed a black male toss what appeared to be heroin out [of] the front passenger window of the minivan. [The pedestrian] knew it was heroin because [he] said he is a user of heroin and is familiar with the packaging. [The pedestrian retrieved] the heroin [that had been tossed out of the minivan's window].

Approximately 25 bundles [of heroin], with a bundle being about 13 bags [of heroin] each, was [recovered from the pedestrian's] person at the time he was stopped. Trooper Brennan[,] and other officers[,] conducted a further search of the area. In the area of the pedestrian[-]stop at Chester Pike and Sellers Avenue, approximately 1,370 baggies of heroin were recovered, 970 were

stamped "Walk Hard" and the remaining 390 were stamped "Gorilla."

A search[, pursuant to a warrant,] was conducted on the [minivan] and an additional 975 baggies [of heroin,] stamped "Walk Hard"[,] were seized from the [minivan]. The markings on these bags [were] consistent with the markings [on the bags of contraband] recovered from the pedestrian and from the street the day of the incident. Several [cellular telephones] were also recovered from the vehicle. As part of Trooper Brennan's investigation, he relayed information to other law enforcement agencies about a wanted suspect and the arrest of [the driver]. On April 6, 2018[,] Trooper Brennan was contacted by a narcotics detective with the Dover, Delaware Police Department. The detective heard through law enforcement channels that [the driver] was picked up on drug charges. He had an idea who the male occupant [was] that fled the scene[.] The detective sent Trooper Brennan a [photograph] of [Appellant]. As soon as [Trooper Brennan] saw the photograph, [he] was able to positively identify [the minivan passenger] as [Appellant]. Through later investigation, Trooper Brennan was able to determine [that] one of the [cellular telephones] found on the floor of the minivan belonged to [Appellant]. There were [] pictures and videos of [Appellant] on that [cellular telephone,] as well as text messages concerning drug sales.

Trial Court Opinion, 3/17/20, at 1-5 (extraneous capitalization and record citations omitted).

The record demonstrates that on April 9, 2019, Appellant was charged with, *inter alia*, the aforementioned crimes. Appellant filed a motion to suppress, *inter alia*, the pre-trial photographic identification of Appellant, which the trial court denied on May 9, 2019. On August 1, 2019, a jury found Appellant guilty of the aforementioned crimes. On November 7, 2019, the trial court imposed a sentence of 24 to 48 months' incarceration for the conviction of possession of a controlled substance with the intent to deliver

and a consecutive sentence of 24 to 48 months' incarceration for the criminal conspiracy conviction. Appellant was also ordered to serve two years' probation, which was to run consecutive to his aggregate sentence of 48 to 96 months' incarceration.[3] The trial court amended the judgment of sentence on November 25, 2019, to include credit for time served. On December 3, 2019, Appellant filed a notice of appeal.[4]

Appellant raises the following issues for our review:

[1.]  Whether the trial court erred in failing to grant Appellant's motion to suppress the controlled substances because the seizure was affected in the absence of reasonable suspicion?

[2.]  Whether the trial court erred in failing to grant Appellant's motion to suppress the controlled substances because the search and arrest [were] affected in the absence of probable cause?

[3.]  Whether the trial court erred in failing to grant Appellant's motion to suppress the controlled substances and his motion for extraordinary relief because the photographic identification of Appellant made by Trooper Brennan was unduly suggestive?

[4.]  Whether the evidence was insufficient to support the conviction of possession with intent to deliver because possession was not proven beyond a reasonable doubt?

[5.]  Whether the trial court erred in charging the jury on consciousness of guilt when identification was at issue?

_____

[3] We note that the trial court misstated Appellant's sentence as an aggregate sentence of two to four years' (24 to 48 months') incarceration followed by a consecutive term of two years' probation. Trial Court Opinion, 3/17/20, at 1.

[4] Appellant and the trial court complied with Pa.R.A.P. 1925.

[6.] Whether the trial court erred when it denied [A]ppellant's motion that it charge the jury on identification with standard jury instruction 4.07?

[7.] Whether the trial court erred when it stated at sentencing that Appellant was not RRRI eligible?

[8.] Whether the sentence was illegal because the trial court failed to properly consider the statutory factors in the Sentencing Code before it imposed sentence?

Appellant's Brief at 12-13 (extraneous capitalization omitted).

In his first three issues, Appellant challenges the trial court's denial of his motion to suppress, which allegedly sought to suppress both the physical evidence, as well as the pre-trial photographic identification of Appellant as the passenger in the vehicle. *Id.* at 12, 25-30. Appellant contends that the trial court erred in not suppressing the physical evidence obtained, specifically the contraband, on the grounds that Trooper Brennan lacked reasonable suspicion to justify the traffic stop and lacked probable cause to justify what Appellant characterized as an arrest when Trooper Brennan reached his left arm into the vehicle in an alleged attempt to remove the passenger from the vehicle. *Id.* at 25-30. Appellant asserts that Trooper Brennan's identification of Appellant as the passenger in the vehicle was the result of an unduly suggestive procedure in which Trooper Brennan identified Appellant as the passenger after receiving a single photograph of Appellant from another law enforcement officer. *Id.* at 12.

A review of the record demonstrates that Appellant, in his motion to suppress, sought "to suppress the identification of [Appellant] committing this

crime" on the basis that "the identification [was] the product of a suggestive procedure, such that undermines the reliability, giving rise to a substantial likelihood of misidentification amounting to a violation of due process." Appellant's Motion to Suppress Identification, 1/28/19, at unnumbered pages 1 and 3. At the suppression hearing, Appellant's counsel, when asked to state on the record with specificity and particularity, the items that Appellant was seeking to suppress, stated, "this is our motion to suppress the out[-]of[-]court identification of [Appellant,] as well as the search -- any items recovered from the search of [cellular telephones recovered from the vehicle] that was involved in this incident." N.T., 3/29/19, at 3. Appellant failed to request, either in his written motion to suppress or verbally at the suppression hearing, the suppression of the illegal contraband, specifically the heroin, obtained as the result of the circumstances surrounding the traffic stop of the vehicle and subsequent search of the vehicle pursuant to a warrant. *See* Pa.R.Crim.P. 581(D) (stating, "[t]he motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof"). Therefore, Appellant waived his first three issues concerning the suppression of the illegal contraband because he failed to raise these issues with the trial court in his motion to suppress and cannot raise the issues for the first time with this Court. *See* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.Crim.P. 581(B) (stating that issues not raised in a timely motion to

- 7 -

suppress are waived); ***Commonwealth v. Freeman***, 128 A.3d 1231, 1242 (Pa. Super. 2015) (holding that a defendant waives any claim of error on appeal regarding the failure to suppress evidence when the defendant fails to request the suppression of the specific evidence with the trial court in a motion to suppress).

Appellant additionally claims, in his third issue, that the trial court failed, as a matter of law, to suppress Trooper Brennan's pre-trial identification of Appellant as the passenger in the vehicle based upon Trooper Brennan's subsequent receipt of a single photograph of Appellant from a fellow law enforcement officer. Appellant's Brief at 39.

An appellate court's standard of review and scope of review of a challenge to the denial of a suppression motion is well-settled.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [When] the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [suppression] court are subject to plenary review.

> ***Commonwealth v. Hoppert***, 39 A.3d 358, 361-[3]62 (Pa. Super. 2012).
>
> Moreover, "appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Stilo***, 138 A.3d 33, 35-36 (Pa. Super. 2016)[.]

***Commonwealth v. Wright***, 224 A.3d 1104, 1108 (Pa. Super. 2019) (original brackets and ellipsis omitted), *appeal denied*, 2020 WL 4188234 (slip copy) (Pa. Filed July 21, 2020).

> Whether a pre[-]trial identification should be suppressed as unreliable is determined from the totality of the circumstances. A pre[-]trial identification will not be suppressed unless the facts demonstrate that the identification procedure was so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification.

***Commonwealth v. Cousar***, 154 A.3d 287, 306 (Pa. 2017) (citations omitted).

Here, Appellant argues that Trooper Brennan's "ability to see the [individual in the front passenger seat of the vehicle] and remember his look was compromised" during the initial traffic stop, including Trooper Brennan's failure to observe whether the individual had a facial birthmark the same as the one on Appellant's face, because of the "high-energy" nature of the encounter. Appellant's Brief at 39. Appellant asserts that Trooper Brennan's identification of Appellant as the passenger of the vehicle was based upon a single photograph of Appellant supplied by another law enforcement officer and that the use of a single photograph was unduly suggestive. ***Id.*** Appellant

contends that despite Trooper Brennan's status as a law enforcement officer, a photo-array should have been presented to Trooper Brennan. ***Id.***

In denying Appellant's motion to suppress the pre-trial photographic identification of Appellant by Trooper Brennan, the trial court made the following findings of fact pertinent to Appellant's issue:

4. Trooper Brennan approached the vehicle from the passenger side. The passenger side window was down. Trooper Brennan made contact with the front passenger[,] who he could see clearly from a distance of about one foot.

5. Trooper Brennan made an in-court identification of [Appellant] as the passenger.

6. During an interaction that lasted from 10 to 30 seconds [Appellant] looked directly at Trooper Brennan. . . .

13. As part of Trooper Brennan's investigation, he relayed information to other law enforcement agencies about a wanted suspect and the arrest of [] the driver of the vehicle[.]

14. On April 6, 2018, Trooper Brennan was contacted by a detective with the Dover, Delaware Police Department who heard through law enforcement channels that [the driver] was arrested on drug related charges and that Trooper Brennan was looking for a male who was not arrested at the scene. The detective believed he knew who the male was. He sent a [photograph] of the male to Trooper Brennan. From the photograph, Trooper Brennan was able to positively identify [the minivan passenger] as [Appellant].

15. [The trial court] finds [that] the photograph sent to Trooper Brennan by the Dover Police Department was neither suggestive nor conducted in a suggestive manner.

16. [The trial court] finds the testimony of Trooper Brennan to be credible.

Order Denying [Appellant's] Motion to Suppress, 5/9/19, at 2, 4-5 (record citations omitted). The trial court concluded,

- 10 -

Initially, [the trial court finds,] under the totality of the circumstances, [that] the Dover Police Department['s] sending a photograph to Trooper Brennan of a person who might be of interest in his investigation was neither unduly suggestive nor conducted in a suggestive manner. It was simply good police work. No other information was relayed to Trooper Brennan[, including information that the person depicted in the photograph] was definitely the suspect. Identification of the person in the photograph was left to Trooper Brennan.

*Id.* at 6 (citations omitted).

Here, a review of the record demonstrates that Trooper Brennan, as part of his investigation, requested information pertaining to the identity of a black, non-Hispanic male who was wanted as a suspect on drug related charges in connection with an incident involving a March 28, 2018 traffic stop of a vehicle operated by another individual.[5] N.T., 3/29/19, at 17-18. A detective with the Dover, Delaware Police Department was familiar with the driver and Appellant, who he believed were dating, based upon his police work in the Dover, Delaware area. *Id.* at 18, 33. In response to Trooper Brennan's request for information on the suspect's identity, the detective provided Trooper Brennan with a photograph of Appellant, which Trooper Brennan used to confirm that Appellant was the passenger in the vehicle. *Id.* at 18. Upon receipt of the photograph, Trooper Brennan was immediately able to positively

---

[5] In his communication with other law enforcement officers, Trooper Brennan identified the driver by full name.

identify the person in photograph as the same person he observed as the passenger in the front seat of the vehicle. *Id.*

We are unpersuaded by Appellant's argument[6] that a photo-array was necessary to allow Trooper Brennan to properly identify Appellant as the vehicle's passenger when Trooper Brennan was acting in his capacity as the investigating law enforcement officer in a criminal investigation. Law enforcement officers regularly share information in the course of their criminal investigations to aid other officers in quickly identifying suspects.[7] Based upon a totality of the circumstances, we concur with the trial court that the use of a single photograph of Appellant was not unduly suggestive in Trooper Brennan's pre-trial identification of Appellant as the vehicle's passenger. *See* *Commonwealth v. Johnson*, 139 A.3d 1257, 1278 (Pa. 2016) (stating, "[a] pre-trial identification violates due process only when the facts and circumstances demonstrate that the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of

_____

[6] Appellant fails to cite any legal authority in support of his argument. *See* *Commonwealth v. Martz*, 232 A.2d 801, 811 (Pa. Super. 2020) (stating, that development of a meaningful argument, in an appellate brief, includes citation to relevant, legal authority in support of the claim).

[7] Justice Kennedy, writing for the United States Supreme Court in *Maryland v. King*, noted that by 1900 "it had become the daily practice of the police officers and detectives of crime to use photographic pictures for the discovery and identification of criminals [and] the courts likewise had come to the conclusion that it would be a matter of regret to have its use unduly restricted upon any fanciful theory or constitutional privilege." *Maryland v. King*, 569 U.S. 435, 457 (2013) (citations, original brackets, and original quotation marks omitted).

irreparable misidentification" (citation omitted)). Therefore, Appellant's issue is without merit.

In his fourth issue, Appellant claims the evidence was insufficient to support his conviction for possession of a controlled substance with the intent to deliver because the Commonwealth allegedly failed to prove, beyond a reasonable doubt, that Appellant possessed the controlled substance. Appellant's Brief at 31-34. In addressing a sufficiency claim, our standard of review and scope of review are well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004). To preserve a sufficiency claim, Appellant's Rule 1925(b) statement must specify the

element or elements upon which the evidence was insufficient. ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008).

In order to sustain a conviction for possession of a controlled substance with the intent to deliver, pursuant to Section 780-113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it." ***Commonwealth v. Bricker***, 882 A.2d 1008, 1015 (Pa. Super. 2005) (citation omitted); ***see also*** 35 P.S. § 780-113(a)(30). When the defendant does not have actual possession of the controlled substance, *i.e.* the contraband is not found on his person, the Commonwealth must establish that the defendant had constructive possession of the controlled substance in order to support the conviction. ***Commonwealth v. Brown***, 48 A.3d 426, 430 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Brown***, 48 A.3d at 430 (citation omitted).

Here, Appellant contends that the Commonwealth established constructive possession through circumstantial evidence, showing that

- 14 -

Trooper Brennan identified Appellant as the passenger of the minivan "very close in time to the apparent throwing of heroin packages out of the [vehicle's passenger window]." Appellant's Brief at 21. According to Appellant, this circumstantial evidence, namely Trooper Brennan's observation of Appellant in the vehicle and the pedestrian eyewitness's observation of the contraband being tossed out of the vehicle's passenger window during the police pursuit of the minivan, was insufficient to demonstrate, beyond a reasonable doubt, that Appellant constructively possessed the contraband. *Id.* Appellant asserts that the evidence demonstrates that the driver of the vehicle and the pedestrian were in possession of the contraband. Appellant further asserts that although contraband was discovered between the driver's seat and the passenger's seat of the vehicle, upon the vehicle's search pursuant to a warrant, there is insufficient evidence that the contraband was present in that location when Appellant was seated in the front passenger seat, assuming *arguendo*, that Appellant was the passenger. *Id.* at 32-33.

The trial court, in addressing Appellant's issue, stated,

In framing this issue, [Appellant] totally discounts Trooper Brennan's in-court identification of [Appellant] as the individual seated in the front passenger seat of [the vehicle at the time of the initial traffic stop]. [The encounter] took place in broad daylight. Trooper Brennan observed [Appellant] for about 10 to 30 seconds face-to-face. During part of this time[,] they were engaged in a physical struggle. . . .

Trooper Brennan's positive identification of [Appellant] provided sufficient evidence for the jury to conclude beyond a reasonable doubt that he committed the crimes. Once the jury determined [Appellant] was involved, the record contains ample evidence for

[the jury] to conclude he constructively possessed the controlled substance.

Trial Court Opinion, 3/17/20, at 9.

The record demonstrates that Trooper Brennan observed two individuals in the minivan prior to his initial stop of the vehicle. N.T., 7/31/19, at 39. Trooper Brennan stated, "the driver was behind the driver's wheel, obviously, and the passenger I observed, []-- I couldn't tell if [the passenger] was [in] the rear third row passenger seats of the vehicle or the second interior row, but he was directly in the middle of the vehicle on the passenger seat." *Id.* Upon approaching the minivan, Trooper Brennan observed Appellant sitting in the front passenger seat of the minivan, and the driver was described as a "black[,] non-Hispanic female[.]" *Id.* at 40-41, 42-43. The minivan subsequently fled with Trooper Brennan in pursuit. *Id.* Trooper Brennan indicated that he lost site of the minivan for a brief time during the pursuit. *Id.* at 47. When the minivan was stopped, subsequent to the police pursuit of the minivan, only the female driver remained in the minivan; Appellant was no longer in the minivan. *Id.* at 53. A search of the minivan was conducted pursuant to a search warrant and two bricks (50 bundles) of heroin were recovered from the area between the driver's seat and the passenger's seat of the minivan. *Id.* at 63. An additional brick (25 bundles) of heroin was found behind the driver's seat. *Id.* A pedestrian, who was later stopped by the police as a possible suspect, observed an African-American male toss packages of heroin out of the passenger side window of the minivan as the

minivan drove past him during the police pursuit of the minivan. *Id.* at 168-172.

Based upon the totality of the circumstances, the jury could infer, beyond a reasonable doubt, that Appellant constructively possessed the heroin that was found in the minivan and on the street, after being tossed from the passenger window of the minivan. Trooper Brennan unequivocally identified Appellant, in-court, as the passenger of the minivan. Packages of heroin were located between the front seats of the minivan, as well as behind the driver's seat, in close proximity to the front passenger seat of the minivan that Appellant occupied when Trooper Brennan initially stopped the minivan. In addition, an African-American male was observed tossing packages of heroin out of the front passenger window of the minivan shortly before the police stopped the minivan a second time. Although the pedestrian did not identify Appellant as the male tossing the contraband out of the passenger window, a jury could infer, beyond a reasonable doubt, that Appellant was the male because Trooper Brennan observed only Appellant and a female driver in the van during his initial stop and prior to the subsequent high-speed police pursuit of the minivan. Therefore, in viewing all of the evidence and the inferences drawn from that evidence in the light most favorable to the Commonwealth, as the verdict winner, there was sufficient evidence for the jury, as fact-finder, to find that Appellant had constructive possession of the controlled substance. Thus, Appellant's sufficiency claim is without merit.

In his fifth issue, Appellant challenges the trial court's jury instruction on the consciousness of guilt, arguing that the jury instruction was given in error because identification of Appellant, as the perpetrator of the crime, was allegedly at issue. Appellant's Brief at 35-36.

"In order to preserve a claim that a jury instruction was erroneously given, the [a]ppellant must have objected to the charge at trial." ***Commonwealth v. Parker***, 104 A.3d 17, 29 (Pa. Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 296 (Pa. 2015); ***see also*** Pa.R.A.P. 302(b) (stating, "A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(C) (stating, "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury."). A party's objection at the charging conference to a proposed jury instruction is not sufficient to preserve a claim challenging that instruction on appeal. ***Commonwealth v. Cosby***, 224 A.3d 372, 421 (Pa. Super. 2019), *citing* ***Parker***, 104 A.3d at 29. The party must object immediately after the jury charge is given and before the jury retires for deliberation. ***Cosby***, 244 A.3d at 421-422; ***see also Commonwealth v. Rouse***, 2020 WL 2781559, at *4 (Pa. Super Filed May 28, 2020) (stating, "the failure to object or take exception to a jury instruction before the jury retires to deliberate results in waiver of review of the instruction). This requirement is "frequently overlooked[.]" Pa.R.A.P. 302 at Official Note.

Here, a review of the record demonstrates that Appellant objected to the trial court providing the consciousness of guilt jury instruction during the charging conference. N.T., 8/1/19, at 4. Appellant, however, failed to lodge a specific objection to this jury instruction after the trial court completed the charge and before the jury retired for deliberation. *Id.* at 62-64. Therefore, Appellant waived this issue because he did not preserve the issue with the trial court.

Appellant's sixth issue challenges the trial court's denial of his motion requesting that the trial court charge the jury with standard jury instruction 4.07(B), relating to identification testimony, because identification of Appellant as the perpetrator of the crime was allegedly in doubt. Appellant's Brief at 37-40.

"Our standard of review when considering the denial of jury instructions is one of deference – [this Court] will reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018) (citation and original brackets omitted), *appeal denied*, 217 A.3d 180 (Pa. 2019). Pennsylvania Suggested Standard Criminal Jury Instruction 4.07(B), derived from our Supreme Court's decision in *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), in essence, conveys "to the jury that it must receive with caution the testimony of any witness who [] failed to identify the defendant or whose identification is of doubtful accuracy." *Commonwealth v. Washington*, 927 A.2d 586, 604 (Pa. 2007). In *Kloiber*, our Supreme Court held,

where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify [the] defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the [trial court] should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826-827. "A defendant is entitled to a *Kloiber* instruction where a witness: (1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions." *Commonwealth v. Johnson*, 139 A.3d 1257, 1281 (Pa. 2016) (citation omitted). The *Kloiber* Court held, however, that

[w]here the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution [and the] positive testimony as to identity may be treated as the statement of a fact.

*Kloiber*, 106 A.2d at 826 (citations and quotation marks omitted).

Here, Appellant argues that the *Kloiber* instruction was warranted because the details and accuracy of Trooper Brennan's description of the minivan passenger were allegedly "poor." Appellant's Brief at 38. Appellant contends Trooper Brennan's identification of Appellant as the perpetrator was based upon his observation of the minivan passenger for a limited period of time, in which Trooper Brennan was focused not on the passenger's face but, rather, on the passenger's left hand. *Id.*

The trial court, in denying Appellant's request for a **Kloiber** instruction, stated that Trooper Brennan was positive in his identification of Appellant as the perpetrator, and the patrol unit video of the initial traffic stop showed Trooper Brennan approaching the minivan, after it stopped, and looking in the vehicle's window at the passengers. N.T., 8/1/19, at 7. The trial court explained,

> The crime took place in broad daylight. Trooper Brennan observed [Appellant] for about 10 to 30 seconds face-to-face. During part of this time[,] they were engaged in a physical struggle. After receiving and viewing [Appellant's] photograph, Trooper Brennan immediately expressed a high level of certainty [Appellant] was the actor. The photographic identification was made within ten days of the incident. There were no circumstances warranting special caution concerning the accuracy of the identification.

Trial Court Opinion, 3/17/20, at 9-10.

Based upon our review of the record, we concur with the trial court that the **Kloiber** instruction was not warranted. Trooper Brennan observed Appellant, under well-lite circumstances, for between 10 and 30 seconds, at a distance of one foot, and was able to unequivocally identify Appellant as the perpetrator upon subsequent receipt of Appellant's photograph. Confidence in Trooper Brennan's identification of Appellant as the minivan passenger was inferentially shown through Trooper Brennan's "immediate" rejection of a pedestrian apprehended as the suspected passenger after Trooper Brennan provided a general description of Appellant to other law enforcement officers. Trooper Brennan stated with certainty, during his in-court identification of Appellant as the perpetrator of the crime, that Appellant was the passenger

he observed in the minivan. Therefore, we find no abuse of discretion, or error of law, in the trial court's denial of Appellant's request for the **Kloiber** instruction. Consequently, Appellant's issue is without merit.

In his seventh issue, Appellant claims the trial court erred in determining that he was not eligible for the Recidivism Risk Reduction Inventive ("RRRI") program, when the trial court sentenced Appellant. Appellant's Brief at 41-43. Appellant's claim implicates the legality of his sentence and raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Finnecy**, 135 A.3d 1028, 1033 (Pa. Super. 2016) (stating, "[i]t is legal error to fail to impose a RRRI minimum on an eligible offender" (citation omitted)), *appeal denied*, 159 A.3d 935 (Pa. 2016).

A defendant convicted of a criminal offense is eligible for the RRRI program if he, or she, meets all of the following requirements:

(1) Does not demonstrate a history of present or past violent behavior.

(2) Has not been subject to a sentence the calculation of which includes an enhancement for the use of a deadly weapon as defined under law or the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing or the attorney for the Commonwealth has not demonstrated that the defendant has been found guilty of or was convicted of an offense involving a deadly weapon or offense under 18 Pa.C.S.[A.] Ch. 61 (relating to firearms and other dangerous articles) or the equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation or criminal attempt, criminal solicitation or criminal conspiracy to commit any of these offenses.

(3) Has not been found guilty of or previously convicted of or adjudicated delinquent for or criminal attempt, criminal

solicitation or criminal conspiracy to commit murder, a crime of violence as defined in 42 Pa.C.S.[A.] § 9714(g) (relating to sentences for second and subsequent offenses) or a personal injury crime as defined under section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act, except for an offense under 18 Pa.C.S.[A.] § 2701 (relating to simple assault) when the offense is a misdemeanor of the third degree, or an equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

(4) Has not been found guilty or previously convicted or adjudicated delinquent for violating any of the following provisions or an equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation or criminal attempt, criminal solicitation or criminal conspiracy to commit any of these offenses:

18 Pa.C.S.[A.] § 4302(a) (relating to incest).

18 Pa.C.S.[A.] § 5901 (relating to open lewdness).

18 Pa.C.S.[A.] Ch. 76 Subch. C (relating to Internet child pornography).

Received a criminal sentence pursuant to 42 Pa.C.S.[A.] § 9712.1 (relating to sentences for certain drug offenses committed with firearms).

Any offense listed under 42 Pa.C.S.[A.] Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).

Drug trafficking as defined in [61 Pa.C.S.A. §] 4103 (relating to definitions).

(5) Is not awaiting trial or sentencing for additional criminal charges, if a conviction or sentence on the additional charges would cause the defendant to become ineligible under this definition.

61 Pa.C.S.A. § 4503 (definition of "Eligible Person") (footnote omitted).  A

defendant demonstrates a history of present or past violent behavior when

there is an established record or pattern of violent behavior. ***Commonwealth v. Cullen-Doyle***, 164 A.3d 1239, 1243 (Pa. 2017) (citation and quotation marks omitted). Evidence that the defendant was previously convicted of resisting arrest is sufficient to establish a history of present or past violent behavior. ***Finnecy***, 135 A.3d at 1034-1035.

Here, Appellant argues that because the Commonwealth "offered no date, facts[,] or docket number on the solitary Pennsylvania case" of resisting arrest (domestic related) in 2017 or on the multiple cases of resisting arrest in the State of Delaware, the Commonwealth did not establish a history of present or past violent behavior. Appellant's Brief at 42. Appellant further contends the trial court erred in failing to determine whether he was eligible for the RRRI program on the record at the sentencing hearing. ***Id.*** at 42-43.

The Commonwealth, in calculating Appellant's prior record score of four on the Pennsylvania Commission on Sentencing's guideline sentence form, represented that Appellant had a prior weapons offense for receiving stolen property of a firearm and seven misdemeanor offenses in the State of Delaware.[8]  N.T., 11/7/19, at 11. The following dialogue occurred at the sentencing hearing:

---

[8] 11 Del.C §§ 1450 and 1257(b), respectively. Under Delaware law, a person is guilty of receiving stolen property of a firearm "if the person intentionally receives, retains or disposes of a firearm of another person with intent to deprive the owner of it or to appropriate it, knowing that it has been acquired under circumstances amounting to theft, or believing that it has been so acquired." 11 Del.C. § 1450.

| | |
|---|---|
| [Commonwealth:] | [Appellant has a history of violence, resisting arrest, domestic assaults as a juvenile. He has a history of violence[.] |
| | . . . |
| [Appellant:] | Your Honor, and that conviction was[,] I was a juvenile and I got charged as an adult. I was a juvenile on a violent offense. I was charged as an adult. I really [do not] have [any] adult record. This will be my first assault offense, prior to resisting arrest and violence. The violence was part of my juvenile record. |
| [Commonwealth:] | Your Honor, we have a disposition [in] 2017 for resisting arrest, domestic related. There are multiple resisting arrests in his record that are adult convictions [] in the State of Delaware. . . . |
| The Court: | All right; [he has] been arrested almost every year, [2018,] which is this case, [2017, 2016, 2015, 2013, 2012, 2010, 2009, 2008, and 2007.] Is that your record? |
| [Appellant:] | That's [a] juvenile record. |
| The Court: | So were you a juvenile in 2016? |
| | . . . |
| [Appellant:] | I was like 19, 20 – like 19. |
| The Court: | All right; so that's not a juvenile record. |
| | . . . |
| [Appellant:] | No, not at all. |

*Id.* at 18-20.

Here, the record demonstrates that Appellant was convicted of receiving a stolen firearm, which is a deadly weapon.[9]  Appellant also has a history of resisting arrest, including a disposition in 2017 when Appellant was an adult. Therefore, Appellant was ineligible for the RRRI program because he was convicted of a crime involving a deadly weapon and of resisting arrest on multiple occasions, which demonstrates a pattern of violent behavior.  **See** 61 Pa.C.S.A. § 4503(1) and (2); **see also Finnecy**, 135 A.3d at 1034-1035.  In determining Appellant's ineligibility for the RRRI program, the record demonstrates that the trial court considered Appellant's established pattern of violent behavior on the record at the time of sentencing.  **See** N.T., 11/7/19, at 18-20.  Consequently, Appellant's issue is without merit.

In his final issue, Appellant challenges the sentence imposed by the trial court on the grounds the trial court failed to consider "confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Appellant]."  Appellant's Brief at 45.  Appellant claims his sentence was, therefore, illegal.  **Id.**

Appellant's claim does not implicate the legality of his sentence but, rather, challenges the discretionary aspects of his sentence.  **See**

---

[9] A deadly weapon is defined as, *inter alia*, "[a]ny firearm, whether loaded or unloaded[.]"  18 Pa.C.S.A. § 2301.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1041 (Pa. Super. 2013) (*en banc*) (stating, "[a] sentencing court's failure to follow the pertinent aspects of [42 Pa.C.S.A.] § 9721(b) do[es] not result in an illegal sentence, but pertain[s] to discretionary sentencing matters" (citation omitted)).[10]

> It is well-settled that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):
>
>> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test[.]
>>
>> We conduct a four-part analysis to determine: (1) whether appellant [] filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a [post-sentence] motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> *Id.* at 170.

---

[10] Section 9721(b) of the Pennsylvania Sentencing Code states, that when imposing a sentence, the trial court "shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [S]ection 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

*Commonwealth v. Hill*, 210 A.3d 1104, 1116 (Pa. Super. 2019) (original brackets omitted).

Here, the record demonstrates that Appellant filed a timely notice of appeal. Appellant, however, failed to preserve his challenge to the discretionary aspect of his sentence by raising the issue at sentencing or by filing a post-sentence motion to reconsider and modify the sentence. Therefore, Appellant has waived his issue.[11] *See Cartrette*, 83 A.3d at 1042 (holding, that a challenge to the discretionary aspect of sentence is waived if not raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceeding).

Amended judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/20

---

[11] Appellant failed to include a Rule 2119(f) statement in his brief. The Commonwealth, however, did not object to Appellant's failure to comply with Rule 2119(f). Because Appellant failed to preserve his challenge with the trial court and, therefore, waived this issue, we do not examine whether the failure to include the Rule 2119(f) statement is a fatal defect. *See Commonwealth v. Gambal*, 561 A.2d 710 (Pa. 1988) (holding, if the Commonwealth does not file an objection, this Court may either enforce the procedural requirement, finding waiver of the issue for failure to file a Rule 2119(f) statement, or ignore the procedural defect, if the failure to file a Rule 2119(f) statement does not significantly hamper the Court's ability to determine whether a substantial question exists).