J-S21044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL BRYAN RODGERS, | |
| Appellant | No. 3000 EDA 2014 |

Appeal from the Judgment of Sentence July 25, 2014
in the Court of Common Pleas of Chester County
Criminal Division at No.: CP-15-CR-0001302-2013

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 08, 2015**

Appellant, Michael Bryan Rodgers, appeals from the judgment of sentence imposed following his jury conviction of one count each of fleeing or attempting to elude a police officer (graded as a felony of the third degree) and driving under the influence of alcohol (DUI).[1]  Appellant challenges the weight of the evidence to support his conviction.  We affirm.

We take the relevant facts and procedural history of this case from the trial court's January 12, 2015 opinion and our independent review of the record.  On October 29, 2012, the day of "Hurricane Sandy," Officer Thomas

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3733(a), (a.2)(2)(i) (applicable where defendant commits DUI offense while fleeing or attempting to elude a police officer) and 3802(b), respectively.

E. Barton of the North Coventry Township Police Department was on duty wearing full uniform and driving a marked police vehicle. At approximately 5:50 p.m., the officer observed an all-terrain vehicle (ATV) and a dirt bike driving in the middle of a public roadway. Because these vehicles are not permitted on roadways,[2] Officer Barton attempted to catch up with them in his police vehicle. The officer temporarily lost sight of the vehicles, but located them in the parking lot of a supply store. Officer Barton activated his overhead lights as he pulled into the parking lot. Both vehicles immediately fled, splitting around the officer's vehicle and back onto the roadway. Officer Barton pursued them with his lights and siren activated, and he radioed other police units for backup. He described the operator of the ATV as a male with no helmet, a dark jacket, and blue jeans. The ATV and dirt bike passed by two other marked police vehicles with activated overhead lights, and then drove into an open field.

Officer Barton and other officers, including Police Chief Robert Schurr, pursued the fleeing vehicles on surrounding roads because it was too wet and dangerous to follow them on the field. While on a roadway, Officer Barton observed the ATV and dirt bike approach his and Chief Schurr's police vehicles "head on," (N.T. Trial, 4/16/14, at 66), at a distance of

_____

[2] Officer Barton testified that ATVs and dirt bikes are not allowed on public roads because they are not licensed, are typically not insured, and are not equipped with proper lighting or safety features. (**See** N.T. Trial, 4/16/14, at 50-51).

approximately fifty feet, and a speed of approximately thirty-five to forty miles per hour. The officers immediately stopped and exited from their vehicles. The ATV and dirt bike passed by them and went off the roadway into a grassy area. As the operators passed by, Officer Barton observed that the driver of the ATV was wearing a dark jacket, blue jeans, a black mask on the lower portion of his face, and "maybe a red sweatshirt" underneath a dark jacket. (*Id.* at 70).[3] Chief Schurr drew his service pistol, and the officers ordered the drivers of the ATV and dirt bike to stop. The men did not comply and continued to flee on their vehicles. Chief Schurr was familiar with Appellant from the community, and he relayed his belief that Appellant was the operator of the ATV over police radio.

Officer Jesse Smith then observed the ATV traveling on a nearby roadway and began following it without activating his vehicle's lights and siren. The ATV pulled into the driveway of Appellant's residence and the officer relayed the location over police radio. Officer Barton arrived at the scene and the officers observed that the ATV's engine was warm. They knocked on the door of the home and Appellant's wife refused to let them in. Chief Schurr arrived and saw Appellant running near the tree line of the residence. The chief ordered Appellant to sit down, and he complied. In

---

[3] Officer Barton described weather conditions at that time as a medium to heavy rain, but stated "down low, it was clear," and his view of Appellant was not obstructed. (N.T. Trial, 4/16/14, at 105).

response to questioning, Appellant denied that he had been driving the ATV. He told police that he had been collecting black walnuts and drinking beer in his driveway. However, he asked Chief Schurr: "what were you going to do, shoot me?" (N.T. Trial, 4/17/14, at 216). He was wearing jeans and a red sweatshirt and his clothing was wet and covered in mud and dirt from the waist down. His breath smelled of alcohol and his eyes were bloodshot and glassy. Officer Barton identified Appellant as the man on the ATV. The officers arrested Appellant and transported him to Pottstown Hospital where he submitted to a blood test. Testing on Appellant's blood sample showed a blood alcohol content (BAC) of 0.118 percent.[4] Police seized the ATV and determined that it belonged to Appellant's neighbor, Eric James Mitchell.[5]

On April 17, 2014, following a two-day trial, a jury convicted Appellant of the above-stated offenses. The trial court also found Appellant guilty of two related summary traffic offenses.[6] On July 25, 2014, after review of a pre-sentence investigation report and a hearing, the court sentenced

---

[4] The parties stipulated to the results of the blood test. (*See* N.T. Trial, 4/16/14, at 95).

[5] At trial, Mr. Mitchell testified as a defense witness and stated that, on the evening of Hurricane Sandy, he rode his ATV to a Wawa and then to Appellant's home. (*See* N.T. Trial, 4/17/14, at 278-79). He testified that he arrived at Appellant's residence approximately two minutes before the police, and that when the police arrived, he went in the residence and stayed inside. (*See id.* at 279-80).

[6] 75 Pa.C.S.A. §§ 7721(a) and 3736(a).

Appellant on the fleeing or attempting to elude a police officer and DUI counts to an aggregate term of not less than one year and seven months' nor more than three and one half years' incarceration.

On August 4, 2014, Appellant filed timely post-sentence motions, claiming, *inter alia*, that the court should have imposed the sentences concurrently, and challenging the weight of the evidence.[7]  On September 26, 2014, following a hearing, the court entered an order vacating the DUI sentence, reasoning that it merged with the sentence for fleeing or attempting to elude a police officer.  As a result, Appellant's sentence was reduced to a term of not less than one and one-half nor more than three years' incarceration.  The court denied Appellant's post-sentence motion in all other respects.  This timely appeal followed.[8]

Appellant raises the following issue for our review: "[Whether] Appellant is entitled to a new trial as facts presented at trial [indicating] that the Appellant was not guilty were so clearly of greater weight that to have ignored them or to give them equal weight with all the facts was to deny the Appellant justice[?]"  (Appellant's Brief, at 5) (citation omitted).

Our standard of review is as follows:

---

[7] **See** Pa.R.Crim.P. 607(A)(3).

[8] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on November 5, 2014.  **See** Pa.R.A.P. 1925(b).  The trial court entered an opinion on January 12, 2015.  **See** Pa.R.A.P. 1925(a).

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Weathers*, 95 A.3d 908, 911 (Pa. Super. 2014), *appeal denied*, 106 A.3d 726 (Pa. 2015) (citation omitted). When reviewing a weight claim, this Court carefully considers the findings and reasons advanced by the trial court, because the trial judge had the opportunity to hear and see the evidence presented. *See Commonwealth v. Brown*, 48 A.3d 426, 432 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

- 6 -

Here, the crux of Appellant's claim is that the weight of the evidence was insufficient to establish that he was the person who drove the ATV. (*See* Appellant's Brief 16-25). He argues that the jury's verdict was based on police testimony that was not credible. (*See id.*). He leads his argument by pointing out a "contradiction" in Officer Barton's testimony, namely, that the officer initially testified that that he worked a twelve-hour shift on the day of Hurricane Sandy, but later corrected this testimony when presented with his duty log to clarify that he worked a twenty-four hour shift. (*Id.* at 17; *see id.* at 18). Appellant also asserts that Officer Barton's testimony that the fleeing operator of the ATV wore "maybe a red sweatshirt" was inconsistent with the officer's police report, which fails to mention a red sweatshirt. (*Id.* at 19) (emphasis omitted). Appellant contends that the severe weather conditions impacted the officers' abilities to observe accurately the driver of the ATV. (*See id.* at 17, 21). He further alleges that the jury and trial court ignored evidence favorable to his defense, including Mr. Mitchell's testimony that he, not Appellant, was riding the ATV on the evening of Hurricane Sandy, immediately before the police arrived at Appellant's home. (*See id.* at 21-22). This issue lacks merit.

Initially, regarding Appellant's challenges to the credibility of the officers' testimony and identifications, and his assertion that evidence favorable to him was disregarded, we reiterate that the jury as factfinder was "free to believe all, part, or none of the evidence presented and

determine[] the credibility of the witnesses." **_Boyd_**, **_supra_** at 1274. Further, a review of the record fully supports the trial court's finding that the Commonwealth presented ample credible evidence that Appellant was the driver of the ATV, and its conclusion that his challenge to the weight of the evidence is meritless. (**_See_** Trial Court Opinion, 1/12/15, at 15, 27, 44, 58).

Specifically, the record reflects that Officer Barton observed Appellant from a close range during the incident. (**_See_** N.T. Trial, 4/16/14, at 76-77). While at Appellant's residence, the officer identified Appellant as "the guy who was on the ATV." (**_Id._** at 76). Officer Barton made an in-court identification of Appellant as the driver of the ATV, and he testified that there was "[n]o doubt in [his] mind" that Appellant was the driver. (**_Id._** at 106, 145; **_see id._** at 76).

Chief Schurr testified that, when he pointed his pistol at the operator of the ATV, he was standing at a distance so close that he "could almost reach out and touch him." (N.T. Trial, 4/17/14, at 211). Chief Schurr stated that he was familiar with Appellant from the community, that he could see his face clearly during the incident, and that there was no doubt in his mind that Appellant was the operator of the ATV. (**_See id._** at 204, 211, 218). The chief also made an in-court identification of Appellant as the driver of the ATV. (**_See id._** at 208). Chief Schurr testified that, although Appellant denied driving the ATV, he also asked: "what were you going to do, shoot

me?" (*id.* at 216), indicating his awareness that the chief had pointed a pistol at him during the pursuit.

Based on the foregoing, after review of the record, we cannot conclude that the trial court's ruling on the weight claim constituted a palpable abuse of discretion. **See Boyd**, **supra** at 1275. Accordingly, Appellant's sole issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015