J-S51036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHORY OMAHR WHITE-ASHE | : | |
| | : | |
| Appellant | : | No. 734 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 18, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001407-2018

BEFORE: MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 02, 2021**

Khory Omahr White-Ashe (Appellant) appeals from his judgment of sentence entered on December 18, 2019 in the Court of Common Pleas of Franklin County[1] after a jury convicted him of possession with intent to deliver (PWID) heroin and cocaine, possession of drug paraphernalia (PDP), two counts of possession of a firearm by a person prohibited from doing so (6105), and two counts of conspiracy relating to his PWID counts.[2] We affirm.

Appellant raises the following issues for our review:

> I. Whether the [trial court] erred in finding sufficient evidence to convict [Appellant] of Count 1, [PWID,] when [Appellant] was not found in possession of heroin, other persons took

---

[1] We remind counsel that an appeal lies from the judgment of sentence, not the denial of post-sentence motions. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Our Prothonotary has corrected the caption accordingly.

[2] 35 P.S. § 780-113(a)(30), (32); 18 Pa.C.S. §§ 6105, 903.

responsibility for the heroin, and the total amount of heroin found was minuscule?

II.     Whether the [trial court] erred in finding sufficient evidence to convict [Appellant] of Count 2, [PWID,] when [Appellant] was not found in possession of cocaine or found to be involved in cocaine deals?

III.    Whether the [trial court] erred in finding sufficient evidence for conviction of Count 3, [6105,] when [Appellant] was not found to be in possession of a firearm and the firearm was purchased by a co-defendant?

IV.     Whether the [trial court] erred in finding sufficient evidence for conviction of Count 4, [PDP,] when [Appellant] was not found to be in possession of drug paraphernalia?

V.      Whether the [trial court] erred in finding sufficient evidence for conviction for Count 5, [6105,] when a co-defendant admitted that the firearm was his?

VI.     Whether the [trial court] erred in finding sufficient evidence for conviction of Count 6, [conspiracy to sell heroin,] when the evidence was insufficient to prove that there was an overt act in pursuance of such conspiracy or proved to have been done by him or by a person with whom he conspired?

VII.    Whether the [trial court] erred in finding sufficient evidence for conviction of Count [7, conspiracy to sell cocaine,] when the evidence was insufficient to prove that there was an overt act in pursuance of such conspiracy or proved to have been done by him or by a person with whom he conspired?

VIII. Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 1 [PWID]?

IX.     Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 2, [PWID]?

X.      Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the

- 2 -

evidence and denying a request for a new trial on Count 3, [6105]?

XI. Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 4, [PDP]?

XII. Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 5, [6105]?

XIII. Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 6, [conspiracy]?

XIV. Whether the [trial court] abused its discretion in denying [Appellant's post-sentence motion] challenging the weight of the evidence and denying a request for a new trial on Count 7, [conspiracy]?

XV. Whether the [trial court's] imposition of consecutive, rather than concurrent, sentences is unduly harsh, considering the nature of the crimes and the length of imprisonment?

Appellant's Brief, at 4-8.

On December 18, 2019, Appellant was sentenced to 60 to 120 months of imprisonment as to each of the 6105 counts and PWID (heroin), 36 to 120 months of imprisonment for conspiracy relating to PWID (heroin), 18 to 120 months of imprisonment for PWID (cocaine), and 6 to 12 months of imprisonment for PDP, for an aggregate sentence of 240 to 612 months of imprisonment as all sentences are consecutive.[3] Appellant, who is currently 34 years old, will thus be either in prison or under parole supervision until he

_____

[3] The trial court noted that the second conspiracy count merged for sentencing purposes. Trial Ct. Op., 6/19/20, at 2 n.3.

is approximately 85 years old, should he live that long, and will not be eligible for parole until he is approximately 55 years old. He challenges the sufficiency and weight of the evidence as to each conviction, and challenges the trial court's sentence, imposed consecutively, as unduly harsh.[4]

## Facts Adduced at Trial

On June 14, 2018, Detective Bradley Kyner of the Chambersburg Police Department was conducting surveillance of 102 South Federal Street, as neighbors had noticed a high volume of foot traffic and were concerned about the possibility of drug trafficking. N.T. Trial, 9/10/19, at 25-26, 31. Detective Kyner observed several people go in and out of the house. *Id.* at 32. At one point, he saw a black male (later identified as Tyler Stone Harrington) exit the house and conduct what he believed, based on his training and experience, to be a hand-to-hand drug transaction with two individuals in a vehicle. *Id.* at 32, 35-36. He photographed two individuals who accessed the house: Luz Reyes and Harrington. *Id.* at 33, 35. Detective Kyner also saw Appellant engaging in what appeared to him to be a hand-to-hand drug sale. *Id.* at 39.

---

[4] Appellant and the trial court both complied with Pa.R.A.P. 1925. Appellant was represented by counsel at trial and sentencing but elected to file post-sentence motions *pro se*. Trial Ct. Op. at 2. He filed a *pro se* post-sentence motion in which he made arguments sounding in weight and the discretionary aspects of his sentence. *See* Appellant's Post-Sentence Motion, 1/15/20, at 1, 4, 7 (Appellant's motion has eccentric page numbering; we refer to the pages as they are sequenced in the record). His post-sentence motion was timely filed, as the trial court afforded Appellant thirty days in which to file it. *See* N.T. Sentencing, 12/18/19, at 19. Appellant is represented by counsel in the present appeal.

On June 28, 2018, Washington Township Police Detective John Brady, of the Franklin County Drug Task Force, was conducting surveillance of a controlled drug buy at a nearby location. N.T. Trial at 42-43, 49, 51-52. He photographed the hand-to-hand sales he observed, and some of the photographs he took depict Appellant engaging in such sales. *Id.* at 47.

Law enforcement obtained a search warrant for 102 South Federal Street, and Trooper Antjuwan Cox of the Pennsylvania State Police testified that he was part of the law enforcement team that conducted the search. N.T. Trial at 99, 102. During the search, Appellant tried to flee but was apprehended. *Id.* at 103. Trooper Cox questioned Appellant while the search was conducted, and Appellant admitted that he was a crack cocaine distributor. *Id.* at 104. He also immediately acknowledged the presence of a firearm in the house and directed Trooper Cox to the bedroom, where he apparently believed it could be found. *Id.* As they spoke with one another, Trooper Cox noticed Appellant focusing not on him but on a bag in the hallway. *Id.* at 104. The bag, which was apparently marketed under the brand name Mossimo, contained a substantial amount of crack cocaine. *Id.* at 107. Police recovered two digital scales, drug packaging materials including sandwich bags, a metal grinder for grinding marijuana, ammunition, and two guns: a Smith and Wesson .40 caliber handgun and a .22 caliber firearm. *Id.* at 108-11, 114. Police also found five cellular phones and $361 in cash, and a baggie of heroin in the kitchen freezer. *Id.* at 112, 116. In addition, they found a food stamp card for an individual who is not otherwise identified in this case;

Trooper Cox testified that some drug users who receive public benefits trade their food stamps for narcotics. *Id.* at 117.

Appellant gave Trooper Cox permission to search his phone and provided him with the phone's passcode. N.T. Trial at 118. Trooper Cox testified that he recovered text messages from Appellant's phone, including an exchange with codefendant Demitrus Faust referring to a cocaine sale and an exchange with his mother in which she warns him to "stop having people come to [his] house" because the high traffic had drawn the attention of law enforcement.[5] *Id.* at 122-23. In another text conversation with his mother, Appellant told her that he has "the stuff" and he would be coming soon with $3,000. *Id.* at 124. Two days prior to execution of the search warrant, he sent a text message to an unknown person that he was back around and that he had blue bags. *Id.* at 125. Trooper Cox testified that this referred to heroin. *Id.*

Video recovered from Appellant's phone depicts him holding a bag of cocaine and discussing how he would package and sell it. N.T. Trial at 126. Photographs stored in the phone depict blue glassine bags with what Trooper Cox believed to be heroin and Appellant's hand and wrist with the Mossimo bag in the background.[6] *Id.* at 129-30. In another photograph, Appellant is

---

[5] Demitrus Faust entered into a plea agreement at CP-28-CR-0001706-2018 to one count of PWID, under which he was sentenced to 316 days to 23 months of imprisonment, with parole at expiration of the minimum sentence and upon approval of a home plan. *See* Judgment of Sentence, 8/14/19.

[6] Appellant was apparently photographing his wristwatch.

touching his beard and in the background cocaine is visible on a table. *Id.* at 130. Another shows marijuana, a marijuana blunt, and a digital scale. *Id.*

Franklin County Drug Task Force Detective Jason Taylor testified as an expert in drug packaging and distribution and rendered his opinion that the drugs recovered at Appellant's house were kept in a manner reflecting an intention to distribute them. N.T. Trial at 157-59, 162. He noted that the search of Appellant's house did not yield the type of drug paraphernalia that one would expect to find if the 100 bags of crack cocaine were for personal use; nor did police find equipment for the use of heroin. *Id.* at 163.

Nicholas Stark, a co-owner of Cavalry Firearms, a gun shop, testified that he sold a Smith and Wesson M&P .40-caliber handgun to Luz Reyes. N.T. Trial at 54, 56-57. Reyes testified that she entered a guilty plea prior to Appellant's trial, and specifically that she pled guilty to conspiring with Stone-Harrington, Faust, and Appellant to sell cocaine and heroin. *Id.* at 62, 64-65. She read from a letter she had written to the trial judge in which she acknowledged wrongdoing but also attributed her behavior to "allow[ing] a man who promised the world to use and manipulate me." *Id.* at 66. She identified Appellant as the father of her son, and acknowledged that the two (as of the time of trial) were still in a romantic relationship. *Id.* at 69. She testified that Appellant selling drugs out of her house was something that "just – it happened." *Id.* at 71. She acknowledged that Appellant directed her to buy the handgun. *Id.* at 72. She further acknowledged a text message exchange between herself and Appellant in which she sent him pictures of

guns from the gun shop and he directed her to purchase a Smith and Wesson. *Id.* at 72-73. She confirmed the existence of another text exchange in which the two were fighting and she expressed a desire to transfer the gun out of her name, and another exchange in which Appellant wrote, "Baby can you bag up 10 bags of the white, the scale, $50 a bag, total of 10 bags," which she admitted was a reference to packaging drugs for sale. *Id.* at 75-76.

The Commonwealth played for the jury phone calls between Reyes and Appellant that were intercepted and recorded during Appellant's pretrial incarceration. In one call, Appellant said "you got to move that stuff," which apparently referred to drugs. N.T. Trial at 78. He also directed Reyes to retrieve a bookbag from 102 South Federal Street, as it contained phone numbers of drug buyers and he wanted her to continue the operation while he was incarcerated. *Id.* at 81. In one call, he directed Reyes to get a "little weigher," "keep going to the gym," and "keep your weight up" which were coded directions to purchase a scale and to obtain more drugs from their supplier. *Id.* at 83-84. She admitted having engaged in drug sales at his direction. *Id.* at 95.

**Jurisdiction**

Initially, we must confirm that this Court has proper jurisdiction to act on Appellant's appeal, as his sentencing hearing introduced an unusual variable into our conventional jurisdictional analysis. "We lack jurisdiction to consider untimely appeals, and we may raise such jurisdictional issues *sua sponte*." ***Commonwealth v. Capaldi***, 112 A.3d 1242, 1244 (Pa. Super.

- 8 -

2015) (citation omitted). "If a defendant files a **timely** post-sentence motion, the appeal period does not begin to run until the motion is decided [. . . however, a]n **untimely** post-sentence motion does not toll the appeal period. *Id.* (citations omitted).

Nevertheless, this Court has held that, in certain circumstances, a trial court may permit a defendant to file an otherwise untimely post-sentence motion *nunc pro tunc*.

> To be entitled to file a post-sentence motion *nunc pro tunc*, a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, i.e., reasons that excuse the late filing. . . . When the defendant has met this burden and has shown sufficient cause, the trial court must then exercise its discretion in deciding whether to permit the defendant to file the post-sentence motion *nunc pro tunc*. If the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc*, the court must do so expressly.
>
> *        *        *
>
> If the trial court does not expressly grant *nunc pro tunc* relief, the time for filing an appeal is neither tolled nor extended. . . . [W]hen the trial court grants a request to file a post-sentence motion *nunc pro tunc*, the post-sentence motion filed as a result must be treated as though it were filed within the 10-day period following the imposition of sentence.

*Commonwealth v. Dreves*, 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*) (footnote omitted).

Based upon the following, we conclude that the trial court expressly granted Appellant permission to file a post-sentence motion *nunc pro tunc*.

At his sentencing hearing, through counsel, Appellant expressed a desire to proceed *pro se*.[7] N.T. Sent. at 17. The trial court, appropriately, acted on a concern that Appellant have new counsel with whom he could discuss the *pro se* option before he made the decision. ***Id.*** at 18. Trial counsel was privately retained, but was not retained to represent Appellant post-sentencing. ***Id.*** at 17. Appellant informed the trial court that he had already prepared a post-sentence motion and was ready to file it. ***Id.*** at 19. The trial court observed that it could not accept his motion until Appellant had waived his right to counsel. ***Id.*** The trial court then asked the Commonwealth if there would be any objection to enlarging the time in which Appellant might file his post-sentence motion, and the Commonwealth responded that there would be no objection. ***Id.*** Then, the trial court proposed to grant Appellant an additional thirty days in which to file a post-sentence motion, thus providing more time for Appellant to consult with appointed counsel and decide whether to proceed *pro se* or with counsel. ***Id.***

Appellant was sentenced on December 18, 2019, and counsel was appointed the next day. On December 31st, he filed a motion to proceed *pro*

---

[7] We also note that the trial court, prior to imposing sentence, noted Appellant's arguments sounding in the weight of the evidence. N.T. Sent. at 7 ("[Y]ou're making credible arguments regarding weight and sufficiency of evidence, but those questions aren't before me today. Those will be questions that you can raise with the Superior Court in a direct appeal."). Thus, we are assured that Appellant made appropriate efforts to comply with the letter and spirit of Pa.R.Crim.P. 607, and certainly the trial court was given timely notice that weight of the evidence would be an appellate issue in this matter.

*se*. On January 15, 2020 (28 days post-sentencing), the trial court held a hearing on Appellant's motion, granted it, and accepted his post-sentence motion for filing.[8] On January 27th, appointed counsel filed a motion to withdraw, which was granted on March 13th. The Commonwealth filed an answer to Appellant's post-sentence motion on February 13th. On April 17th, 122 days after Appellant's December 18th sentencing hearing and 94 days after the filing of Appellant's post-sentence motion, the trial court denied that motion. On May 1st, Appellant filed a motion to extend the time in which he might file an appeal, and the trial court denied the motion on May 11th. On May 15th, 150 days after his sentence was imposed and 29 days after the trial court denied his post-sentence motion, Appellant filed his notice of appeal.

Thus, we conclude that the trial court, pursuant to **Dreves**, expressly granted Appellant permission to file a post-sentence motion, *nunc pro tunc*, within 30 days of the imposition of sentence. Appellant filed his *pro se* motion within the permitted time period, and subsequently filed a notice of appeal within 30 days of the date the trial court denied his post-sentence motion. Therefore we conclude that the appeal is timely and we may proceed to the merits of Appellant's complaints.

### Sufficiency and Weight

---

[8] The docket reflects that the trial court's order permitting Appellant to proceed *pro se* was not docketed until the following day, January 16th.

- 11 -

Appellant argues that the evidence undergirding each of his convictions is insufficient, and that each conviction is against the greater weight of the evidence. We review each conviction in series, analyzing both the weight and sufficiency challenges as we proceed.

In reviewing a challenge to the sufficiency of the evidence, our standard of review requires this Court to examine all of the evidence admitted at trial, together with any reasonable inferences that can be drawn therefrom, in the light most favorable to the party who prevailed below. *See Commonwealth v. Crabill,* 926 A.2d 488, 490 (Pa. Super. 2007). If the evidence adduced below, when viewed through this lens, establishes each element of the charged crimes beyond a reasonable doubt, then we must affirm. *Id.* "[W]e bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility." *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007) (citations omitted).

A challenge to the weight of the evidence generally must be preserved in a post-sentence motion, per Pa.R.Crim.P. 607 (providing that weight challenges must be brought by oral or written motion before sentencing, or in a post-sentence motion).[9] "As noted in the comment to Rule 607, 'the purpose

_____

[9] The trial court notes that Appellant's post-sentence motion was "disorganized and convoluted" and states that "[t]o the extent [Appellant]

- 12 -

of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.'" ***Commonwealth v. Gillard***, 850 A.2d 1273, 1277 (Pa. Super. 2004). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. ***Commonwealth v. Widmer***, 744 A.2d 745, 751–52 (Pa. 2000); ***Commonwealth v. Brown***, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because a factfinder considering the same facts may have arrived at a different conclusion. ***Widmer***, 744 A.2d at 752. "[T]he role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Id***. at 752 (citation omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Brown***, 648 A.2d at 1189.

### PWID, Paraphernalia, & Conspiracy – Cocaine

---

now raises issues that were not included in his *Post-Sentence Motion*, we believe they are waived." Trial Ct. Op., 6/19/20, at 4 (incorporating Trial Ct. Op., 4/17/20, responding to post-sentence motion).

To establish PWID, the Commonwealth must prove that Appellant knowingly or intentionally possessed a controlled substance with the intent to manufacture, distribute, or deliver it while not properly registered to do so.[10] *See* 35 P.S. § 780–113(a)(30); **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012). A drug paraphernalia conviction is established when a defendant uses, or possesses with the intent to use, drug paraphernalia for the purpose of, among other things, packing, repacking, storing, or otherwise introducing a controlled substance into the human body in violation of our anti-narcotics act.[11] *See* 35 P.S. § 780-113(a)(32). Otherwise mundane packaging materials can constitute paraphernalia; the Commonwealth must establish that such materials were used or intended to be used with a controlled substance. **Commonwealth v. Torres**, 617 A.2d 812, 815 (Pa. Super. 1992).

Conspiracy is established when, with the intent of promoting or facilitating commission of a crime, a person agrees with another that "one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime" or "agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903(a)(1) and (2).

---

[10] Appellant does not claim to be registered to purvey controlled substances.

[11] The Controlled Substance, Drug, Device and Cosmetic Act appears at 35 P.S. §§ 780-101 to 780-114.

"When contraband is not found on the defendant's person, the Commonwealth must establish 'constructive possession,' that is, the power to control contraband and the intent to exercise that control." ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996) (citation omitted). Multiple individuals may share access, control, and the intent to exercise control over illegal objects or substances. ***Id.*** These elements may be inferred from examining the totality of the circumstances, and the Commonwealth may establish constructive possession by circumstantial evidence. ***Id.***

Viewing the evidence pertaining to crack cocaine in the light most favorable to the Commonwealth, this is not a close call. During the house search, as soon as Appellant spoke with Trooper Cox and realized that he had been under surveillance for some time, Appellant volunteered that he was a crack cocaine dealer, gave Trooper Cox his cellular phone, and provided the code to unlock the phone as well. Certainly the prodigious quantities of crack cocaine recovered are consistent with trafficking rather than personal use. Evidence of conspiracy was also ample, but the conviction can be supported by this text message, from Appellant to Reyes, alone: "Baby can you bag up 10 bags of the white, the scale, $50 a bag, total of 10 bags." N.T. Trial at 75-76. Appellant's explicit admission not only that he was selling drugs but that he **is a crack cocaine dealer** exemplifies his recognition that his operation had been exposed and there was no further purpose to be served by being

- 15 -

evasive.[12] The digital scales and packaging materials, viewed in this context, amply support Appellant's paraphernalia conviction.

The Commonwealth explained the lack of money recovered by opining that the bulk of drugs meant that Appellant had just gotten (and paid for) a new quantity of crack cocaine, but had not had a chance to sell any significant amount of the new batch at that time.[13] This makes sense. Appellant's challenges to his PWID, conspiracy, and paraphernalia convictions stemming from crack cocaine collapse under a mountain of evidence, and must fail.

### Violations of the Uniform Firearms Act (VUFA)

Appellant challenges his convictions under 18 Pa.C.S. § 6105(a)(1) for two counts of possession of a firearm by a person prohibited from doing so. A conviction under this section is predicated on two elements: a conviction of an enumerated offense, and possession of a firearm.[14] Appellant's arguments are essentially a retread of his arguments regarding the cocaine and other

---

[12] N.T. Trial at 104 ("[Appellant] did admit to me that he was a cocaine – crack cocaine distributor.").

[13] N.T. Trial at 166-67 (court-qualified expert Detective Taylor testifying, "Well, [the lack of cash is] easily explainable because the amount of controlled substances that were found . . . [t]hey had not sold enough to make up the funds that would account for the sales, so basically they had just acquired the large amounts of controlled substances and had[n't] yet made enough sales . . ." (the transcript says "had yet made enough sales" but it is clear from the context that the witness meant "hadn't".)).

[14] **See** 18 Pa.C.S. § 6105(a)(1).

incriminating evidence recovered during the search of his home.[15]  In brief, we affirm for many of the same reasons that we affirm his convictions for selling crack cocaine and conspiring to do so, and for possessing paraphernalia in service of those actions.  The evidence established that one of the guns was purchased by codefendant Reyes at Appellant's explicit direction, and that he even told her what to say, should the vendor inquire as to why she was buying a handgun.  That particular gun was recovered from the same Mossimo bag that the Commonwealth established was used by all coconspirators in the conspiracy to sell crack cocaine that Appellant directed.  Although Appellant argues that one of the guns was claimed by a codefendant,[16] as noted **supra** the jury is free to credit all, some, or none of the evidence presented.  Both guns were recovered from the Mossimo bag, and Appellant's constructive possession and control of that bag and its contents is firmly established by the Commonwealth's evidence.  Given that we have already found Appellant's connection to the bag via the law of constructive possession to be sound, and given that there can be no doubt that Appellant had prior convictions establishing the propriety of a conviction under Section 6105, this claim also fails.

---

[15] **See** Appellant's Brief at 16-18.

[16] **See** Appellant's Brief at 5.

## PWID & Conspiracy – Heroin

In his first and sixth claim of error, Appellant challenges his convictions for PWID-heroin and conspiracy thereof. Appellant argues that the Commonwealth did not establish constructive possession beyond a reasonable doubt, as the hundredth of a gram of heroin was recovered from a first-floor refrigerator that multiple people shared and Appellant's bedroom was on the second floor. Appellant's Brief at 12.

The Commonwealth points out that the overall volume of drugs and drug paraphernalia at Appellant's house, in concert with the guns recovered by police, strongly suggests an intent to sell drugs. Commonwealth's Brief at 10.[17] The trial court points out that Reyes, Appellant's codefendant, testified that Appellant was involved in the drug trade. Trial Ct. Op. at 5.

The trial court described the evidence supporting Appellant's PWID-heroin conviction as follows:

> A substance identified as heroin was found at the house [Appellant] was living in. [Appellant] was observed in the home on a regular basis. The heroin was found in a dresser drawer in [Appellant's] room. [Appellant] had extensive conversations about selling heroin, including specific amounts and prices that

---

[17] The Commonwealth seems to have confused the heroin and the cocaine, as it argues from Appellant's connection to the Mossimo bag, his visible concern about it during his conversation with Trooper Cox, and the photograph found in his phone in which the bag is visible. However, it was the crack cocaine that was found in the bag; the 0.01 grams of heroin was recovered from the kitchen refrigerator. N.T. Trial at 116. The evidence as to the Mossimo bag bolsters the Commonwealth's already-strong case for constructive possession of the crack cocaine and other contraband found therein, but sheds no light on the propriety of Appellant's conviction for PWID-heroin.

were preserved both in text messages and prison call logs, and testified to by co-defendant Reyes. One call discussed [Appellant] needing to get back to 102 Federal Street, where the drugs were found, to get some "stuff." Specifically, [Appellant] wanted a bookbag containing information about people who will buy drugs. The paraphernalia discovered during the search was indicative of selling drugs, not using them. This included sales and empty bags of the kind used for drug distribution. [Appellant] directed others to sell drugs.

Trial Ct. Op., 4/17/20, at 6 (record citations omitted). Some of these details are correct, but several are erroneous. There was no heroin found in Appellant's room; rather, a bag of crack cocaine was found there. N.T. Trial at 146. None of the conversations in which Appellant discussed his crack cocaine business mentioned heroin.[18] The rest of the evidence described by the trial court would seem to apply to Appellant's crack cocaine business, and was used by the Commonwealth to establish the particulars of that business.

Likewise, the Commonwealth misstates the facts by asserting that the hundredth of a gram of heroin was found in the Mossimo bag, which the Commonwealth established was the key repository for Appellant's drug trade, containing the guns, drugs, and packaging material that made up the stock-in-trade of his commercial venture. Commonwealth's Brief at 10.

---

[18] In one of the cited conversations, codefendant Reyes acknowledges that Appellant's instruction to "bag up 10 bags of the white, the scale, $50 a bag, total of 10 bags" and "You all got the bags to put the turkeys in" refers to packaging drugs, but when asked "what kind?" she answered "I don't remember." N.T. Trial at 75-76. Of course, this Court is aware that euphemisms are common in the drug trade; nevertheless, the Commonwealth must carry its burden beyond a reasonable doubt with testimony that establishes each element of the charged crimes and is, at a minimum, facially credible.

However, we conclude that Appellant's conviction is sufficient, as a) the Commonwealth found a hundredth of a gram of heroin in Appellant's refrigerator, b) Appellant used blue bags in packaging narcotics, a color that the Commonwealth established is ubiquitous in Philadelphia's heroin trade, and c) when asked if she understood the consequences of her responses (thus especially focusing the witness on truthful replies), whether she conspired with Appellant to sell drugs, and whether those drugs were cocaine and heroin, codefendant Reyes responded with "Yes."[19]   Further, the Commonwealth established that it is not unusual to see a hundredth of a gram of heroin packaged for sale.[20]

Because, if true, this evidence is sufficient to establish that Appellant was a heroin trafficker, we affirm Appellant' judgment of sentence as to PWID-heroin and conspiracy thereof.  Likewise, we find Appellant's weight challenge unavailing due to the uncontradicted evidence we have just recited.

**Denial of Appellant's Post-Sentence Motion**

In his eighth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims of error, Appellant argues that the trial court erred in denying his post-sentence motion challenging the weight of the evidence and denying his request for a new trial as to each of his convictions.  This is essentially a re-packaging of his argument as to the weight of the evidence, which we analyze

---

[19] N.T. Trial at 116, 125, 65.

[20] N.T. Trial at 168.

alongside this sufficiency arguments as to each conviction; thus, we will not repeat our analysis here.

**Discretionary Aspects of Sentence**

Appellant argues that the trial court abused its discretion in imposing consecutive, rather than concurrent, sentences in this matter, as the sentence is unduly harsh. Appellant's Brief at 44-46. His statement per Pa.R.A.P. 2119(f) outlines the four-part test this Court must apply when evaluating such claims. *Id.* at 43-44.

To establish that a sentence is unduly harsh, an appellant must show, "by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence. We must consider:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Gonzalez***, 109 A.3d at 731 (citation omitted). The trial court notes that the only challenge Appellant posed in his post-sentence motion was to what he assumed was the imposition of a mandatory minimum sentence for his PWID-

heroin conviction. Trial Ct. Op. at 4. Thus, this challenge is waived. In any event, Appellant is not entitled to imposition of concurrent sentences. This Court has stated that "a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013) (citation omitted). That is exactly what Appellant has presented here; thus, the claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/02/2021